STATE EX REL. HENNEPIN COUNTY WELFARE BOARD
AND ANOTHER v. ROBERT F. FITZSIMMONS.
LOCAL 34, HENNEPIN COUNTY WELFARE BOARD
EMPLOYEES OF AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, A. F. L.,
AND OTHERS, INTERVENERS.
F. W. NICHOLS, DIRECTOR OF SOCIAL WELFARE,
INTERVENER.[1]

June 5, 1953.

No. 35,949.

[1]Reported in 58 N. W. (2d) 882.

*Lee Loevinger,* Special Assistant County Attorney, for appellants.

*Frank J. Williams,* Assistant County Attorney, for respondent Robert F. Fitzsimmons.

*J. A. A. Burnquist,* Attorney General, *George B. Sjoselius,* Deputy Attorney General, and *Lowell·J. Grady,* Assistant Attorney General, for respondent F. W. Nichols.

*Thomas O. Kachelmacher,* for respondents Local 34 and others.

DELL, JUSTICE.

This is an appeal from a judgment entered on August 16, 1952, quashing an alternative writ of mandamus issued on January 18, 1952, and dismissing the proceeding.

On August 14, 1935, Congress enacted the federal Social Security Act. It provided for the administration of the program by agencies established or to be established by the several states but with the general supervision of the program in the federal government. The Social Security Board (now Administrator) was authorized to establish requirements for such methods of administration as were found to be necessary for the proper and efficient operation of the plan subject to the provision that the methods of administration were not to relate to the selection, tenure of office, and compensation of personnel.

On December 2, 1935, the Minnesota legislature met in special session and enacted legislation to enable the people of Minnesota to avail themselves of the benefits of the federal Social Security Act. Laws were enacted authorizing aid to the "blind" as well as "old age assistance." In 1937 legislation was enacted authorizing aid to "dependent children" in conformity with the federal act and legis-

lation was also enacted setting up county welfare boards throughout the state as the administrative agencies. In 1939 the duties of the State Board of Control were transferred by legislative act to the Director of Social Welfare (herein referred to as Director). In 1939 Congress amended the federal Social Security Act to authorize the Social Security Board to require, after January 1, 1940, the states to adopt "methods relating to the establishment and maintenance of personnel standards on a merit basis."

In 1941, following the enactment of the 1939 amendment to the federal Social Security Act, the legislature enacted a law to insure the establishment and maintenance of a merit plan for all employees of the county welfare boards of the state. By statute the legislature authorized the Director to adopt such rules and regulations as were necessary to comply with the requirements of the federal Social Security Act. In the interim between January 1, 1940, and the passage of the 1941 Minnesota act, the state of Minnesota appears to have continued its operation under the former program. Whether that arrangement was by permission or sufferance of the federal Social Security Board until such time as the Minnesota legislature had opportunity to enact enabling legislation does not appear in the stipulated facts. It is not of material consequence here. The fact is that, at its first session next following the 1939 amendment to the federal Social Security Act, the Minnesota legislature conferred upon the Director the authority to establish the rules and regulaions here involved.

Pursuant to the authority granted to the Director under the Minnesota Laws of 1941 he adopted rules for a merit system of personnel administration for employees of the county welfare boards throughout the entire state. The rules are set forth in a publication entitled, "Public Welfare Manual, Part IV, Personnel—Standards and Practices." Among the rules adopted was one establishing initial, intervening, and maximum rates of pay for each class of positions and providing for steps in salary advancement without change of duty in recognition of meritorious service. Another rule adopted provided that the approved compensation plan should

constitute the official schedule of salaries for all classes of positions in the county welfare merit system program.

On September 1, 1948, the Federal Security Agency, Social Security Administration, issued and promulgated to all state agencies participating in the grants-in-aid programs under the federal Social Security Administration, including the Director of Social Welfare of the state of Minnesota, a "Handbook of Public Assistance Administration," which handbook, among other things, contained standards for a merit system of personnel administration to be established and maintained by any state agency administering approved public assistance plans under the Social Security Administration.

On July 31, 1950, a revised basic compensation plan was adopted and promulgated by the Director superseding the basic compensation plan previously adopted. This revised basic plan was transmitted by the Director to the Federal Security Agency for acceptance and approval. On September 22, 1950, the plan was approved by the Federal Security Agency for the programs of the state of Minnesota covering old age assistance, aid to dependent children, and aid to the blind. The rules and regulations established by the Director in the revised basic plan permitted the county welfare boards throughout the state of Minnesota to fix the compensation of employees within the minimum and maximum salary ranges set out in the rules and regulations of the Director and also gave the county welfare boards discretionary power to grant certain cost-of-living and incentive salary increases to its employees.

Up until December 31, 1951, the Hennepin County Welfare Board paid its employees salaries in accordance with said revised basic compensation plan together with cost-of-living and incentive increases as authorized by the rules and regulations of the Director. On October 16, 1951, the board, by resolution, approved a salary schedule for its employees which exceeded the maximum set forth in the schedule of the Director's established revised basic compensation plan. The salary schedule was submitted to the Director by the board with the request that he incorporate the salary schedule in a state-wide

compensation plan and as a schedule of salaries for the employees of the Hennepin County Welfare Board. After several conferences, the Director, on November 14, 1951, rejected the proposed salary schedule and request of the Hennepin County Welfare Board and informed the board of his rejection and disapproval.

Notwithstanding the rejection and disapproval of said salary schedule by the Director, the Hennepin County Welfare Board, on December 24, 1951, adopted the salary schedule and plan for its employees. The salaries and rates of compensation were in excess of those provided for in the rules and revised basic plan adopted and promulgated by the Director. Upon being advised by the Hennepin County Welfare Board of its action in adopting the new salary schedule, which schedule the board advised the Director was to become effective on January 1, 1952, the Director, on December 27, 1951, notified the Hennepin County Welfare Board that the salary increases provided in the schedule were not in conformance with the merit system rules and revised basic plan of the Director. The Director also notified the defendant, county auditor of Hennepin county, that the schedule of salaries fixed by the Hennepin County Welfare Board, in its schedules of December 24, 1951, were in excess of those established by the Director in his rules and revised basic plan and were, therefore, illegal and void, and the defendant was advised by the Director that he was without legal authority to issue warrants in payment of said salaries.

On January 7, 1952, the Hennepin County Welfare Board certified to the defendant orders for the payment of salaries to its executive secretary and other employees in accordance with the schedule adopted by the board on December 24, 1951. On January 9, 1952, defendant advised the Hennepin County Welfare Board that he would not issue warrants in payment of the salaries because the salaries were in excess of those provided in the personnel rules of the Director. The defendant, in a written opinion by the county attorney of Hennepin county, was advised that, since the salaries in the schedule adopted by the Hennepin County Welfare Board on December 24, 1951, exceeded those established by the Director

in his revised basic plan, it was not only proper but the duty of defendant to refuse to issue warrants in payment of said salaries. The county attorney further advised him that if he issued the warrants he would, no doubt, subject himself to a claim for personal liability and also subject himself to criminal charges.

None of the employees involved in this proceeding is employed in an institution, sanatorium, or hospital. The rules and regulations adopted by the Director for a merit system of personnel administration for employees of county welfare boards have been approved by the attorney general and have been filed in the office of the secretary of state of Minnesota as required by L. 1945, c. 452. The rules and regulations, as so filed, have not been revoked or amended and, pursuant to said statute, have the force and effect of law. The state of Minnesota receives from the federal government under the federal Social Security Act grants-in-aid for public assistance in the approximate sum of $22,000,000 per year. Of this amount Hennepin county receives approximately $4,500,000 for old age assistance and aid to dependent children in addition to $205,000 for administration.

The Hennepin County Welfare Board petitioned for and secured an alternative writ of mandamus, directed to the defendant, requiring him to issue warrants for the payment of the salaries of the executive secretary and other employees of the Hennepin County Welfare Board at the rates and in the amounts certified to the defendant by said board in accordance with the salary schedule adopted by it on December 24, 1951, or to show cause why he had not done so. The defendant answered and made his return to the alternative writ claiming that the salaries which the Hennepin County Welfare Board fixed in accordance with the schedule adopted by it on December 24, 1951, were illegal and void and that the defendant was without authority, under the law, to issue warrants in payment of said salaries. Local 34, Hennepin County Welfare Board Employees of American Federation of State, County and Municipal Employees, A. F. L., and others intervened in support of plaintiff's contention. Jarle Leirfallom, as Director of Social

Welfare, intervened in support of defendant's contention. Thereafter, by stipulation of the parties and order of the court, F. W. Nichols, as Acting Director of Social Welfare, was substituted in his stead. At the time of the trial no testimony was submitted, the facts being stipulated in open court. The court made findings in favor of the defendant and ordered that the alternative writ of mandamus be quashed and that defendant have summary judgment dismissing the proceeding. Judgment was so entered.

The appeal presents two questions: (1) Does the Hennepin County Welfare Board have authority to pay its employees salaries which exceed the maximum rates of pay set forth in the revised compensation plan adopted and promulgated by the Director of Social Welfare of the state of Minnesota and approved by the Federal Security Agency? (2) Does the county auditor of Hennepin county have the legal right to refuse to issue warrants for payment, from the funds of Hennepin county, of the salaries of the executive secretary and other employees of the Hennepin County Welfare Board in accordance with and based upon the salary plan and schedule adopted by the county welfare board on December 24, 1951?

■ An examination of both federal and state laws and an examination of the rules and regulations of the federal Social Security Agency and the Director of Social Welfare are necessary for the determination of the first question presented upon this appeal. It is unnecessary to consider the historical background of the various federal and state statutes dealing with the subject of social welfare. We confine ourselves to an analysis of the federal and state statutes in force at the time of the adoption and promulgation of the federal and state rules dealing with the subject and with those applying to and governing this proceeding.

42 USCA, § 301, provides:

"For the purpose of enabling each State to furnish financial assistance, as far as practicable under the conditions in such State, to aged needy individuals, * * *. [Here follows the sum appropriated.] The sums made available under this section shall be used for making payments to States which have submitted, and had ap-

proved by the Federal Security Administrator \* \* \*, State plans for old-age assistance."

42 USCA, § 302, provides:

"(a) A State plan for old-age assistance must (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them; (2) provide for financial participation by the State; (3) either provide for the establishment or designation of a single State agency to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan; \* \* \* (5) provide such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the administrator shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Administrator to be necessary for the proper and efficient operation of the plan; (6) provide that the State agency will make such reports, in such form and containing such information, as the Administrator may from time to time require, and comply with such provisions as the Administrator may from time to time find necessary to assure the correctness and verification of such reports; \* \* \*.

"(b) The Administrator shall approve any plan which fulfills the conditions specified in subsection (a) of this section, \* \* \*."

42 USCA, § 304, provides:

"In the case of any State plan for old-age assistance which has been approved by the Administrator, if the Administrator, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of such plan, finds—

\*   \*   \*   \*   \*

"(2) that in the administration of the plan there is a failure to comply substantially with any provision required by section 302(a) of this title to be included in the plan;

"the Administrator shall notify such State agency that further payments will not be made to the State until the Administrator is satisfied that such prohibited requirement is no longer so imposed, and that there is no longer any such failure to comply. Until he is so satisfied he shall make no further certification to the Secretary of the Treasury with respect to such State."

42 USCA, §§ 301 to 306, deal with old age assistance; 42 USCA, §§ 601 to 606, deal with aid to dependent children; 42 USCA, §§ 1201 to 1206, deal with aid to the blind. The statutes covering old age assistance, aid to dependent children, and aid to the blind are in all substantial respects the same.

42 USCA, § 1302, provides:

"The Secretary of the Treasury and the Federal Security Administrator shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter."

From these statutes it is clear that there are certain requisites for the several states to obtain financial aid from the federal government under these statutes. (1) A state must submit to and have approved by the Federal Security Administrator a state plan for old age assistance, aid to dependent children, and aid to the blind. (2) The state plan must be effective in all political subdivisions of the state and be mandatory upon them. (3) The state must participate financially in the program. (4) A single state agency must either administer or supervise the state plan. (5) The plan, after January 1, 1940, must include methods of personnel standards on a merit basis, except that the Administrator shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed. (6) The state agency shall comply with such provisions as the Administrator may, from time to time, find necessary.

From these statutes it is equally clear that the Federal Security Administrator (1) shall approve the plan of any state agency which

fulfills the conditions specified in 42 USCA, § 302(a); and (2) shall withhold payments from any state agency which fails to comply with its state plan, which plan has previously been approved by the administrator until there is again compliance with the state plan.

By statute the Federal Security Administrator is required to publish such rules and regulations as are necessary to efficiently administer the functions of the law. While the federal statutes do not, by express direction, require the adoption and promulgation of a state compensation plan as a part of the merit system, they do, however, require the establishment of such administrative methods as are found to be necessary for the proper and efficient operation of the plan.

The Federal Security Agency, Social Security Administration, as directed by the federal statutes, adopted rules and regulations for the proper and efficient administration of the act and issued and promulgated to the several states, including Minnesota, its rules and regulations in "Handbook of Public Assistance Administration." This handbook, among its rules and regulations, contains the following:

"The 'Standards for a Merit System of Personnel Administration' contained in this chapter are a uniform statement of basic merit system standards issued by the Social Security Administration and the United States Public Health Service and are applicable to the programs, including those under the assistance titles of the Social Security Act, in which the establishment and maintenance of methods relating to personal standards on a merit basis is a condition of receiving Federal aid."

"The development of proper and efficient administration of the grant-in-aid programs is a concern of both the Federal and the State agencies cooperating in the programs. Proper and efficient administration requires clear definition of functions, the employment of the most competent available personnel, and the development of staff morale and individual efficiency. The 'merit system' provisions of Federal statutes relating to the grant-in-aid pro-

grams are directed to the achievement of these ends through the application of personnel standards on a merit basis.

"An integral part of the grant-in-aid programs under the Social Security Administration and the Public Health Service of the Federal Security Agency has been the maintenance of a merit system of personnel administration by the interested State agencies. The Federal agencies are interested in the development and continued improvement of State merit systems but exercise no authority over the selection, tenure of office, or compensation of any individual employed in conformity with the provisions of such systems.

\* \* \* \* \*

"Rules and regulations to effectuate a merit system in accordance with these standards are a necessary part of the plans for old-age assistance, aid to dependent children, aid to the blind, child welfare services, maternal and child health services, and services for crippled children, the State unemployment compensation law, and the plan of operation of the State employment service. Such rules and regulations and amendments thereto will be reviewed by the Social Security Administration for substantial conformity to these standards. The administration of the merit system will likewise be subject to review for compliance in operation.

\* \* \* \* \*

"A plan of compensation for all classes of positions in the agency will be established and maintained. Such plan will include salary schedules for the various classes in which the salary of a class is adjusted to the responsibility and difficulty of the work. *The salary range for each class will consist of minimum, intervening, and maximum rates of pay to provide for salary adjustments within the range.* In arriving at such salary schedules, consideration will be given to the prevailing rates for comparable positions in other departments of the State and to other relevant factors. The State administrative agencies will adopt plans for salary increases based upon quality and length of service. Salary laws and rules and regulations uniformly applicable to departments of the State govern-

ment will be given consideration in the formulation of the compensation plan." (Italics supplied.)

To conform with the requirements of the federal Social Security Act and the rules and regulations of the Federal Security Agency, Social Security Administration, the Minnesota legislature enacted the following laws:

M. S. A. 256.01. "* * * The director of social welfare is hereby constituted the 'state agency' as defined by the social security act of the United States and the laws of this state * * *."

M. S. A. 393.07, subd. 4. "* * * The director of social welfare shall adopt such rules and regulations as may be necessary to comply with the requirements of the federal social security board [now Administrator]; * * *."

M. S. A. 393.07, subd. 5. "The director of social welfare shall have authority to require such methods of administration as are necessary for compliance with requirements of the federal social security act, as amended, and for the proper and efficient operation of all welfare programs. This authority to require methods of administration includes methods relating to the establishment and maintenance of personnel standards on a merit basis as concerns all employees of county welfare boards except those employed in an institution, sanatorium, or hospital. The director of social welfare shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods. The adoption of methods relating to the establishment and maintenance of personnel standards on a merit basis of all such employees of the county welfare boards and the examination thereof, and the administration thereof shall be directed and controlled exclusively by the director of social welfare."

M. S. A. 393.07, subds. 2 and 3, require that the duties of the county welfare board be performed in accordance with the standards, rules, and regulations promulgated by the Director of Social Welfare so that compliance may be had with the federal Social

Security Act and in order to obtain grants-in-aid available under that act.

The Director, pursuant to statutory authority granted to him, adopted and promulgated rules and regulations for the administration of the Social Security Act. Among the rules and regulations so adopted were the rules for a merit system of personnel administration for employees of county welfare boards, contained in "Public Welfare Manual, Part IV, Personnel—Standards and Practices." These rules the Director claims are binding upon all county welfare boards, including the Hennepin County Welfare Board. Among the personnel rules so adopted by said Director and contained in said publication are the following:

1221.01. "The Director shall formally adopt and make effective a comprehensive compensation plan for all classes of positions. The plan shall include salary schedules for the various classes, with the salary of each class consistent with the functions outlined in the class specifications. *Initial, intervening, and maximum rates of pay for each class shall be established to provide for steps in salary advancement without change of duty, in recognition of meritorious service.* The advice and suggestions of appointing authorities, prevailing rates in other county departments, and other relevant factors shall be taken into consideration in arriving at such salary schedules." (Italics supplied.)

1222.01. "The approved compensation plan shall constitute the official schedule of salaries for all classes of positions in the County Welfare Merit System program."

The handbook of the Federal Security Agency was issued and promulgated to all state agencies, including Minnesota, on September 1, 1948. On July 31, 1950, a revised basic compensation plan was adopted and promulgated by the Director as a part of the personnel rules adopted by him. On August 31, 1950, the Director transmitted his revised basic compensation plan to the Federal Security Agency and on September 22, 1950, the Federal Security Agency accepted and approved said compensation plan as the plan for the state of Minnesota for its programs of old age as-

sistance, aid to dependent children, and aid to the blind. The rules, regulations, and revised basic plan, as established by the Director and approved by the Federal Security Agency, include initial, intervening, and maximum salaries for each class of positions, thus permitting the several county welfare boards to fix the compensation of their employees within the salary ranges established by the Director. This was the compensation plan followed by all county welfare boards until December 31, 1951, at which time the Hennepin County Welfare Board adopted a salary schedule plan which exceeded the maximums provided for under the rules of Director.

From what has been said we think it is clear that the Director of Social Welfare was clearly right in adopting and promulgating a merit plan which included initial, intervening, and maximum rates of pay for each class of position of the county welfare board system included within the plan and that the plan so adopted was binding upon all county welfare boards within the state. This is the construction which the Hennepin County Welfare Board placed upon the law and the Director's rules, regulations, and revised basic compensation plan until December 31, 1951, for until that time it followed the plan in the payment of salaries to its employees. On October 16, 1951, it manifestly recognized the validity of the plan by recommending to the Director that a new salary schedule be adopted by him on a state-wide basis that would enable the Hennepin County Welfare Board to pay its employees salaries in excess of those set forth in the Director's revised basic compensation plan. This practical construction cannot be ignored. In our opinion the federal and state acts, properly construed, provide that the Federal Security Administrator as well as the Director of Social Welfare shall have authority to adopt rules and regulations with respect to the selection, tenure of office, and compensation of personnel within initial, intervening, and maximum rates of pay but shall have no authority or voice in the selection of any particular person for a position in the state welfare programs nor the determination of his tenure of office and individual compensation.

Much of the phraseology in the federal and state laws is identical. Both have for their aim the proper and efficient operation of the social welfare programs. Both contain barriers to protect the merit system against invasion by the spoils system. Relators concede, for the purpose of this appeal, that the Director was clothed with the authority to adopt and promulgate rules fixing the minimum rate of pay under the merit system but contend that he is without authority to fix the maximum rates of pay under the merit system. They cite no case authority to sustain their position and admit that a research has failed to produce any. Their claim is without merit. It is just as important in the proper and efficient administration of a just and proper merit system to include maximum rates of pay as to include minimum rates of pay. Moreover the plan adopted by the Director is in keeping with the intention of Congress, as clearly shown by the federal Social Security Act, to at all times enable the Federal Security Administrator to have proper and efficient supervision over the social welfare plans of the several states in view of the large contribution to the states by the federal government in aid of their social welfare programs.

Appellants claim support for their position in Opinion Attorney General, No. 125-A-47, January 19, 1945. We consider that opinion entirely superseded by Opinion Attorney General, No. 125-A-64, February 13, 1946, even though the later opinion contained no express reference to the earlier one. The later opinion expresses views in harmony herewith, as did the attorney general in espousing the Director's position in this litigation.

We conclude that the revised basic compensation plan of the Director and the rules and regulations adopted by him are binding upon the several county welfare boards of the state and that the Hennepin County Welfare Board was without authority to pay its employees salaries which exceeded the maximum rates of pay set forth in the revised compensation plan adopted and promulgated by the Director and approved by the Federal Security Agency.

■ Appellants contend that irrespective of the merits of the controversy the defendant, the county auditor, was without author-

ity to refuse to issue the warrants in payment of the salaries certified by the Hennepin County Welfare Board. It is their claim that the duties of the county auditor, in issuing warrants, is ministerial. They contend that, since the formal requirements for certification of the salaries in dispute were met by the board, nothing remained for the auditor except to issue the warrants in accordance with the certification, and they insist that it was error for the trial court not to have issued a peremptory writ of mandamus regardless of the merits of the controversy between the board and the Director.

It is unnecessary to pass upon the question whether the county auditor could refuse to issue warrants in payment of orders certified to him for payment which appeared proper upon their face since the trial court was clearly right in exercising its discretion in refusing to issue the peremptory writ. Mandamus is issued to right and not to create a wrong. The trial court, having determined that the action of the Hennepin County Welfare Board in certifying orders for payment to the county auditor in excess of the maximums permitted under the rules, regulations, and compensation plan of the Director was illegal, in which determination we concur, was not required to issue the writ.

Mandamus is an extraordinary legal remedy awarded, not as a matter of right, but in the exercise of sound judicial discretion and upon equitable principles. The writ is not to be issued when it is sought to compel the performance of an act having an illegal object in view. In determining whether a writ of mandamus should issue the court is not limited to a consideration of the facts and conditions which existed when the proceeding was commenced but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue. A party is not entitled to a peremptory writ of mandamus if at the time of the trial he cannot show a clear, legal right to the writ. It will not issue unless it serves a legal purpose. State ex rel. Brenner v. Hodapp, 234 Minn. 365, 48 N. W. (2d) 519.

In its memorandum here the trial court stated:

"The Court cannot permit its power to be used in a mandamus proceeding for the purpose of forcing a public official to commit a wrong."

The action of the trial court in refusing to issue a peremptory writ of mandamus under the circumstances here shown must be sustained.

Affirmed.

---

[1]Reported in 58 N. W. (2d) 876.