Richard J. SCHREIER,
Petitioner, Appellant,

v.

STATE of Minnesota, et al.,
Respondents.

No. C0–84–1710.

Court of Appeals of Minnesota.

June 25, 1985.

Kueppers, Kueppers, Von Feldt & Salmen, Frank E. Villaume, III, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., John C. Jeppesen, Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, HUSPENI, LESLIE, NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Richard Schreier appeals from a judgment granting respondent State of Minnesota's motion for a directed verdict. Schreier sought a Writ of Mandamus ordering the State to quitclaim an easement to him for an amount equal to the acquisition price plus interest compounded annually pursuant to Minn.Stat. § 161.43 (1982). The trial court concluded there was no enforceable contract between the parties and, therefore, granted the State's motion for a directed verdict. Judgment was entered on August 7, 1984. We reverse.

## FACTS

In 1957, the State of Minnesota acquired through an eminent domain action an easement for highway purposes in approximately 8.85 acres owned by Aloysius P. Rollinger. The land's appraised value was $23,-350, and Rollinger was awarded $20,100 in damages.

A portion of the property was used to construct a segment of Interstate 35E. The westerly 5.97 acres was used to stockpile topsoil material which was used during construction and for maintenance.

In February 1980, and on August 21, 1980, Schreier contacted the Department of Transportation about purchasing the easement. On January 27, 1981, the acquisition engineer sent Schreier the following letter:

It is our understanding that you represent the fee owner of the 5.97 acre tract which the State has declared as surplus highway right of way * * *.

We have just completed an appraisal of that tract which establishes the current value of the State's 5.97 acres of right of way at $119,400.00. There presently is a stockpile of top soil on the site which would be removed before control of the site was relinquished by Mn/DOT. There also is a fence and some young trees which would have to be moved before a sale of the site could be completed. Pursuant to M.S.S. 161.43 the State may convey its highway easement only to the fee owners of record.

Schreier acquired fee ownership to the subject property by a Quit Claim Deed executed December 21, 1981, and recorded January 3, 1983. On May 7, 1982, the acquisition engineer forwarded a second letter to Schreier, which stated in part:

Upon a recent review and update, our appraisals indicate a present value of $107,460.00.

As indicated in our previous correspondence, the State must convey its highway easement only to the fee owners of record. If you are in agreement with the above figure, please submit a certified check, cashier's check or money order made payable to the "Commissioner of Transportation Trunk Highway Fund". Also upon receipt of the Certification of Title, a Quit Claim Deed will be issued to the fee owner.

Schreier never accepted the State's May 7 offer. Instead, on March 9, 1983, Schreier commenced this action in mandamus seeking an order compelling the State to reconvey the easement for the acquisition price plus interest pursuant to *First American National Bank v. State*, 322 N.W.2d 344 (Minn.1982). The State argued *First American* was not applicable and stood by its offer based on market value.

The trial court concluded the May 1982 offer lapsed after a reasonable period of time, and that without an understanding between the parties as to who would bear the cost of removing the topsoil, trees and fence, there was no enforceable contract between the parties.

In an apparent response to the supreme court's decision, sections 161.43 and 161.44 were amended, effective May 14, 1983, to provide for an acquisition price "equal to the appraised current market value" of the easement or the lands to be reconveyed. 1983 Minn.Laws ch. 143, §§ 6, 8.

## ISSUES

1. Was the easement in question surplus and no longer needed for trunk highway purposes in accordance with Minn. Stat. § 161.43 (1982)?

2. Is the supreme court's decision in *First American* or the amendments to section 161.43 controlling in this case?

## ANALYSIS

### I

■ The State argues the easement would be surplus only if the topsoil stockpiled there were removed under terms agreeable to the State together with relocation of a fence and some landscaping.

The state acquisition engineer's letter of January 27, 1981, however, stated the tract had been declared as surplus highway right of way and that the State has always considered the subject land to be surplus. Additionally, the acquisition engineer testified at trial that the acreage was no longer needed for trunk highway purposes. The removal of the topsoil only pertains to the terms and conditions of reconveyance.

## II

Prior to 1983, section 161.43 authorized the State to reconvey to the fee owner any highway easement no longer needed by the State:

The commissioner of transportation may relinquish and quitclaim to the fee owner * * * any easement or portion thereof owned but no longer needed by the transportation department for trunk highway purposes, upon payment to the transportation department of at least the amount of money paid for the acquisition thereof. Whenever less than the easement as originally acquired is to be relinquished and quitclaimed, the amount of moneys to be paid to the transportation department shall not be a less proportion of the consideration paid therefor by the transportation department than the portion to be relinquished and quitclaimed bears to the easement as originally acquired.

Minn.Stat. § 161.43 (1982). The State has consistently interpreted this provision to require payment of the fair market value at the time of reconveyance.

On July 30, 1982, the supreme court held that the consideration to be paid by a former owner for reacquiring surplus land no longer needed for highway purposes pursuant to Minn.Stat. § 161.44 (1980), shall be the acquisition price plus compound interest at the statutory legal rate. *See First American,* 322 N.W.2d at 347. Schreier argues the acquisition price should be calculated by dividing the award by the appraisal and multiplying this percentage by the $1,000 per acre appraised value.

■ The State contends *First American* is not applicable to the facts of this case because it involved the reconveyance of a fee interest pursuant to section 161.44 whereas this case involves the conveyance of an easement pursuant to section 161.43. The State further attempts to distinguish *First American* on the basis that Schreier was not the owner of the underlying fee at the date of acquisition of the easement whereas in *First American* the reconvey-

ance was made to the original owner of the fee. Neither contention has merit.

The language of section 161.44 authorizing the Commissioner of Highways to reconvey a fee interest is nearly identical to section 161.43.

Likewise, the fact that Schreier didn't own the underlying fee at the time of acquisition is not a distinguishing factor. Both sections 161.43 and 161.44 provide for the conveyance of surplus land to persons other than the original owner.

There is nothing to suggest the supreme court would have allowed the State to profit from appreciating land values in a sale to someone other than the original fee owner.

Put another way, we do not think the legislature intended the state to profit from sudden appreciations in land values occasioned by public improvements for which the land was taken but never used. To hold otherwise would put a premium on, and encourage a practice of, condemning more land than is reasonably necessary for public purposes.

*First American,* 322 N.W.2d at 346. Although *First American* was decided two months after the State's May 1982 offer, it is still applicable to the facts of this case.

[A]bsent special circumstances or specific pronouncements by the overruling court that its decision is to be applied prospectively only, the decision is to be given retroactive effect.

*Hoff v. Kempton,* 317 N.W.2d 361, 363 (Minn.1982); *see Streich v. American Family Mutual Insurance Co.,* 358 N.W.2d 396, 398 (Minn.1984).

■ Schreier contends the amendment to section 161.43 does not apply to this case. The amendment became effective May 14, 1983, prior to the conclusion of the trial below. It contains nothing to suggest it should have retroactive effect.

No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.

Minn.Stat. § 645.21 (1984). Therefore, the amendment does not affect any rights Schreier possessed by virtue of the statute

prior to amendment. Minn.Stat. § 645.35 (1984); *see Parish v. Ouie,* 294 N.W.2d 317, 318 (Minn.1980) (repeal of statute does not affect substantive or procedural rights in cases commenced thereunder unless retroactive intent is clearly and manifestly shown on face of statute); *Ekstrom v. Harmon,* 256 Minn. 166, 98 N.W.2d 241 (1959).

The State argues the amendment to section 161.43 governs this sale because no agreement was executed prior to May 14, 1983, the effective date of the statutory amendment. We disagree. It was not possible to enter into an agreement with Schreier before then because the State claimed the supreme court's decision was not controlling. One party was asking for market value while the other sought acquisition price plus interest. This action to compel the State to reconvey the easement at its acquisition price plus interest was commenced prior to the effective date of the amendments. The rationale of *First American* applies up to the effective date of the amendments.

### III

Last, the State contends, and the trial court agreed, no valid contract existed because Schreier did not accept the May 7, 1982 offer within a reasonable period of time and because no agreement was reached with respect to the removal of topsoil, a fence and some trees.

The State's offer wasn't accepted because, as stated earlier, the State was asking market value while Schreier sought acquisition price plus interest. Upon learning of the supreme court's decision in *First American,* Schreier understandably responded to the State's offer by commencing this action, the same response of the property owner in *First American.* In that case, the owner had rejected the State's offer of reconveyance and, only after the State sought to sell the land publicly to the highest bidder, did he commence an action to compel reconveyance at the price the State originally paid for it. The property owner's right to purchase wasn't, and couldn't be, predicated on a contract theory of recovery—there was no acceptance.

### DECISION

Schreier was entitled to purchase the easement at its acquisition price plus interest.

Reversed.

FOLEY, Judge (dissenting).

I respectfully dissent.

Appellant and the State had been negotiating for the sale of the subject easement for two years. During these negotiations there is no indication that appellant ever sought to purchase at the acquisition price. The last offer came from the State to appellant by letter May 7, 1982. Appellant never responded to this offer. In July 1982, the supreme court decided *First American National Bank,* requiring the state to reconvey property interests acquired through eminent domain at the acquisition price.

On May 5, 1983, five days before the amendment of Minn.Stat. § 161.43 took effect requiring purchasers of surplus land taken by eminent domain to pay the current market value, appellant sought a writ of mandamus compelling the state to sell the easement in question for the acquisition price.

A writ of mandamus is an extraordinary legal remedy awarded, not as a matter of right, but in the exercise of judicial discretion and upon equitable principles. *State ex rel. Hennepin County Welfare Board v. Fitzsimmons,* 239 Minn. 407, 58 N.W.2d 882 (1953).

The majority relies heavily on *First American National Bank.* This decision addressed two concerns: preventing the State when reconveying land interest taken through eminent domain from profiting by land appreciation and discouraging the State from abusing its power of eminent domain by surplus taking. The legislature responded to these concerns when it amended Minn.Stat. § 161.43 to require re-

purchasers of land taken by the State to pay current market value.

*First American's* underlying rationale is that neither the condemnee nor the State should profit from land sold or acquired through eminent domain. Here, the majority concluded that the fact the repurchaser in *First American* was the original fee owner is not a persuasive distinction because Minn.Stat. § 161.43 does not distinguish between the original fee holder and any subsequent purchaser.

But the majority does not rely on the statute for its reversal; it relies on *First American.* There the basis for the supreme court's holding that the State should not profit when reconveying land rested in the principle of mutuality involved in eminent domain. The condemnee cannot profit from the prospective increase in land value occasioned by the public construction. Similarly, the court concluded "when the state reconveys land, it should not profit from sudden appreciation in land values." *Id.* at 347.

The *First American* decision reiterated the supreme court's adoption of the principle that the time of taking valuation rule applies evenhandedly to *condemnor and condemnee. Id.* (emphasis added). Based on this decision, the majority here would have us accept the principle that while the condemnor and condemnee cannot profit from appreciated land values, a real estate developer, not the original fee owner, thirteen years after the taking, can so profit by not having to buy the land interest at market value. I cannot accept this conclusion.

In the absence of evidence to the contrary, I must assume that appellant paid the market value for the land adjacent to the property in question, and that he paid the market value for the land subject to the easement in question. Would appellant argue that if the land in question had depreciated in value, he should still pay the acquisition price? I think not. Yet, that is the principle for which *First American* stands:

"Neither an owner nor a condemnor is permitted to gain from any *increase or decrease* in value of the land taken due to the impact upon the land values generated by an area redevelopment project for which the tracts included are acquired."

* * * when the state seeks under section 161.44 to reconvey surplus land no longer needed for highway purposes, the reconveyance to the *original owner* shall be for whatever amount he was paid by the state, plus interest, whether or not that consideration was based on the land's highest and best use when the sale to the state occurred.

*Id.* at 347 (citation omitted) (emphasis added).

I believe that the trial court exercised sound judicial discretion in denying the writ of mandamus which would have required the State to reconvey the property to the appellant at the acquisition price.

I would affirm.

HUSPENI, Judge (dissenting).

I join in the dissent of Judge FOLEY.