**Jane K. MAUER, et al., petitioners, Respondents,**

v.

**Kent J. KIRCHER, Appellant.**

No. C7–98–1004.

Court of Appeals of Minnesota.

Dec. 15, 1998.

Review Granted Feb. 18, 1999.

Richard T. Ostlund, Randy G. Gullickson, Hassan Saffouri, Lindquist & Vennum, P.L.L.P., Minneapolis, MN (for respondents).

John A. Cotter, Jon S. Swierzewski, C. Erik Hawes, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN (for appellant).

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and SHORT, Judge.

## OPINION

SHORT, Judge.

On August 20, 1997, Kent Kircher, president of the Citizens Bank of Olivia, received requests from five of the bank's twelve stockholders to call a special stockholders' meeting. Kircher refused to call the meeting because a majority of bank stockholders did not submit requests and four of the requesting stockholders subsequently petitioned for a writ of mandamus. On appeal from the trial court's issuance of a peremptory writ of mandamus, Kircher argues the trial court erred in: (1) finding the stockholders' requests obligated Kircher to call a special meeting; (2) denying his motion to amend his answer; and (3) failing to conduct a trial.

## FACTS

The Citizens Bank of Olivia is a state-chartered bank controlled by twelve stockholders. Kent Kircher is president of the bank and chairman of the board. His mother, Marjorie Kircher, is also on the board and holds 46.91 percent of the shares. Jane Mauer, Helmut Mauer, A. Richard Kircher and Faye K. Weimann (collectively "respondents") are minority stockholders and together hold 26 percent of the bank's shares.

In 1997, Marjorie Kircher removed herself from bank business by giving her daughter, Jane Mauer, authority over her shares through a shareholder voting agreement and proxy, an irrevocable proxy, and a durable power of attorney. That same year, respondents and Marjorie Kircher individually submitted requests to Kircher to call a special stockholders' meeting. One week after her submission, Marjorie Kircher rescinded both her request and the documents awarding Jane Mauer authority over her shares.

Section 3 of the bank's bylaws provides:

Special meetings of the stockholders * * * shall be called by the president or cashier * * * upon application made to the president or cashier by a *majority of the stockholders.*

(Emphasis added.) Kircher never called the special meeting because only five of the

bank's twelve stockholders submitted requests and thus a majority of the stockholders did not apply for a meeting. Respondents petitioned the trial court for a writ of mandamus to compel Kircher to call a special meeting. Using a provision stamped directly next to section 3 that states "[w]here a *majority of the outstanding stock* is not represented * * * no business can be transacted," to interpret section 3, the trial court concluded the bylaws require an application for special meeting from owners of a majority of stock, not from a majority of stockholders. (Emphasis added.) Because the requesting stockholders held approximately 73 percent of the bank's common stock at the time of their requests, the trial court ordered a writ of mandamus to compel Kircher to call a special meeting. Kircher appealed the trial court's order and, because judgment had not been entered, we dismissed the appeal as premature. On remand, Kircher moved to amend his answer. The trial court denied Kircher's motion, ordered a peremptory writ of mandamus based on the same interpretation of the bank's bylaws, and entered judgment accordingly.

## ISSUES

I. Did the trial court err in issuing a writ of mandamus?

II. Did the trial court err in denying Kircher's motion to amend his answer and in failing to conduct a trial?

## ANALYSIS

■ A writ of mandamus compels performance of a legal duty, and will only be reversed when there is no evidence reasonably tending to sustain the trial court's findings. Minn.Stat. § 586.01 (1996); *State ex rel. Banner Grain Co. v. Houghton*, 142 Minn. 28, 30, 170 N.W. 853, 853 (1919). Trial courts may issue a writ of mandamus to require a corporation's director to call a meeting of stockholders. *State ex rel. Lake Shore Tel. Co. v. De Groat*, 109 Minn. 168, 176, 123 N.W. 417, 419 (1909). However, when issuing such a writ, courts must examine corporate bylaws to determine the director's actual duties and adhere to the document's usual and accepted meaning. *See American Commerce Ins. Brokers, Inc. v.*

*Minnesota Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227–28 (Minn.1996) (holding language must be given its plain meaning); *State by Humphrey v. Delano Community Dev. Corp.*, 571 N.W.2d 233, 236 (Minn.1997) (noting rules of construction apply to corporate documents as well as contracts).

I.

■ Kircher argues the trial court incorrectly interpreted the bank's bylaws to compel a special stockholders' meeting upon the request of owners of a majority of stock and thus erred in issuing a writ of mandamus based on this interpretation. In the absence of ambiguity, courts are bound to attribute the usual and accepted meaning to contractual language. *See* Minn.Stat. § 645.08(1) (1996) (stating words and phrases must be construed according to common and approved usage); *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 215 N.W.2d 473, 476 (1974) (noting, where language may be interpreted according to its plain meaning, there is no room for construction).

■ We conclude the trial court erred in overlooking the plain meaning of the bank's bylaws and ordering a writ of mandamus. Section 3 of the bank's bylaws unambiguously sets forth the procedure for calling a special stockholders' meeting; it requires a request from a majority of stockholders. *See Black's Law Dictionary* 1419 (6th ed.1990) (defining "stockholder" as "person who owns shares of stock in a corporation"). The provision is not susceptible to more than one meaning and thus is not disturbed by an adjacent clause. *See Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 355 (Minn.1979) (describing how term's ambiguity disappeared when contrasted with similar term in nearby clause). Instead, the drafters' decision to place this stamped provision next to section 3 demonstrates their clear intention of creating different requirements for parallel issues. *See Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986) (concluding that, where words of statute are clear from ambiguity, court has no right to construe or interpret statute's

language); *see also Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir.1996) (concluding that, when parties to contract use different language to address similar issues, it is reasonable to infer different meanings).

The two clauses, when interpreted together, explicitly demonstrate the drafters' intent to provide a safeguard for minority stockholders by allowing them to call a special meeting while still reserving the power to transact business for the owners of a majority of outstanding stock. *See Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 916 (Minn.1990) (interpreting contractual language in its context). This interpretation is consistent with the language of section 22 of the bylaws that gives minority stockholders the power to engage in the fundamental business of amending bylaws if agreed to by a majority of the stockholders at the meeting. Moreover, this interpretation also is compliant with current law. *See* Minn.Stat. § 300.52, subd. 1 (1996) (stating manner of calling and holding all meetings may be prescribed by bylaws). Thus, even if the trial court's interpretation of the bank's bylaws is consistent with common requirements for calling special stockholders' meetings, we cannot overlook the plain meaning of the bank's bylaws by redrafting them to conform to this practice. *See Marso v. Mankato Clinic, Ltd.*, 278 Minn. 104, 115, 153 N.W.2d 281, 289 (1967) (concluding where explicit language indicates purpose different from what is thought to be document's main purpose, language must be given plain meaning and cannot be overruled); *cf.* Minn.Stat. § 302A.433, subd. 1 (1996) (permitting shareholders holding 10 percent or more *voting power* to call special meeting); *Muller v. Theo. Hamm Brewing Co.*, 197 Minn. 608, 610, 268 N.W. 204, 207 (1936) (holding laws did not require specific vote by classes, but vote by majority of all stockholders, which court interpreted, in absence of contradictory language, as vote of holders of majority of all shares of stock).

■ The extreme nature of mandamus also supports our conclusion that the trial court erred in issuing a writ of mandamus. *State ex rel. Hennepin Co. Welfare Bd. v. Fitzsimmons*, 239 Minn. 407, 422, 58 N.W.2d 882, 891 (1953) (noting mandamus is extraordinary remedy awarded in exercise of sound judicial discretion). In support of its issuance of respondents' writ of mandamus, the trial court concluded: (1) the shareholders' voting agreement and proxy, irrevocable proxy, and durable power of attorney agreements between Marjorie Kircher and Jane Mauer are valid; (2) Jane Mauer has the authority to demand a meeting on behalf of Marjorie Kircher; and (3) the bank intended the terms "majority of stockholders" and "a majority of outstanding stock" to be construed together to require a majority of outstanding stock when calling a special stockholders' meeting. However, these conclusions involve disputed facts the trial court resolved without conducting a full hearing that included testimony from both sides. *See* Minn.Stat. § 586.12 (1996) (stating, in mandamus proceedings, each party entitled to have any issue tried as civil action); *see also State ex rel. Brenner v. Hodapp*, 230 Minn. 208, 212–13, 41 N.W.2d 188, 190 (1950) (concluding that because no testimony taken, trial court failed to sufficiently support findings of fact in mandamus proceedings); *State ex rel. Sime v. Pennebaker*, 215 Minn. 75, 78–79, 9 N.W.2d 257, 259 (1943) (noting mandamus proceedings require introduction of proof in course of orderly trial, and claims or assertions of parties cannot be accepted in lieu of competent evidence); Note, *Appealable Orders, Prohibition, and Mandamus in Minnesota*, 51 Minn. L.Rev. 115, 147–49 (1966) (discussing mandamus proceedings and noting peremptory writ must not be issued until after full hearing on matter). Under these circumstances, the proper disposition for this case should have been a mandatory injunction that allowed both parties to produce evidence, and permitted the trial court to resolve disputed facts with substantive findings. *See McIntosh v. Davis*, 441 N.W.2d 115, 118 (Minn.1989) (stating writ of mandamus may only be granted when no other adequate legal remedy is available). Although there appears to be no harm in ordering a special stockholders' meeting, we must conclude the trial court erred in both its interpretation of the bank's bylaws to compel a special stockholders' meeting and

its procedure for issuing a writ of mandamus. Thus, we reverse and remand for proceedings consistent with this opinion.

## II.

Kircher also argues the trial court abused its discretion in denying his motion to amend his answer in light of new information that Jane Mauer violated the law by failing to submit a timely notice of the change of control over Marjorie Kircher's shares and thus rendered her agreements with Marjorie Kircher void. *See* 12 U.S.C. § 1817(j)(1) (1994) (federal law requiring 60–day prior written notice of change of control over outstanding voting stock); Minn.Stat. § 46.048 (1996) (state law requiring same written notice); *Vercellini v. U.S.I. Realty Co.,* 158 Minn. 72, 74, 196 N.W. 672, 672 (1924) (noting contracts in violation of law are void). Although amendments must be liberally granted, they are properly denied if the additional claim cannot be maintained. *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 228 (Minn.1982); *see* Minn. R. Civ. P. 15.01 (requiring amendments to be freely given when justice requires).

Because we conclude the trial court erred in its interpretation of the bank's bylaws, Kircher's attempt to prove a majority of owners of outstanding stock did not request a special meeting through a motion to amend his answer serves no legal purpose. Thus, we need not reach this argument. Moreover, we need not reach Kircher's argument on the trial court's failure to conduct a trial because we reverse the trial court's judgment of a writ of mandamus and remand for proceedings consistent with this opinion.

## DECISION

The trial court incorrectly interpreted bank bylaws to compel a special stockholders' meeting, and failed to follow proper mandamus procedures.

**Reversed and remanded.**

LANSING, Judge (dissenting)

I respectfully dissent from the majority's decision that shareholders holding 72.96 percent of the common stock are unable to compel the bank president to call a special shareholders' meeting. I believe, for three reasons, that the district court properly issued the peremptory writ compelling the bank president to act on the shareholders' special meeting request.

First, the Minnesota Supreme Court has previously interpreted the phrase "majority of all stockholders" to mean "the vote of the holders of the majority of all shares of stock." *Muller v. Theo. Hamm Brewing Co.,* 197 Minn. 608, 612, 268 N.W. 204, 207 (1936) (vote by majority of all stockholders "we take to mean the vote of the holders of the majority of all shares of stock").

Second, the majority's plain-meaning analysis fails to take into account the use of the phrase "majority of the stockholders" in the document as a whole. *See Art Goebel, Inc. v. North Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn.1997) (whether a phrase is ambiguous depends not upon phrase read in isolation, but rather upon the meaning assigned to the phrase in the document as a whole). The bylaws use the phrase "majority of the stockholders" in two places. Section 3 uses the phrase to define what is necessary to demand a special meeting of the stockholders; section 22 uses the phrase to define what is necessary to amend or change the bylaws. Bylaws can be changed or amended on the approval of the superintendent of banks and the vote of "a majority of the stockholders" at any meeting.

To ascribe the majority's plain meaning to the phrase would create an apparent contradiction between the votes necessary to transact business and the votes necessary to determine the bylaws. Both the annual meeting and special meeting sections require a "majority of the outstanding stock" to transact business, which would be inconsistent with the provision that allows bylaws to be amended or changed "by the vote of a majority of the stockholders at any meeting."

The majority's ascribed plain meaning would also result in an absurdity. *See Carl Bolander & Sons, Inc. v. United Stockyards Corp.,* 298 Minn. 428, 215 N.W.2d 473, 476 (Minn.1974) (plain language governs if it is clear and does not "involve an absurdity").

To allow the bylaws to be amended by the vote of a majority of people who own stock would mean that five owners, each with one share of stock, could outvote four owners holding 95 percent of the stock. The absurdity is further confirmed by this five-percent voting power (that has the power to govern the corporation through its control of the bylaws) not being able to conduct a meeting to transact business because that would require a majority of the outstanding shares, which they do not have.

Finally, I reject the majority's plain-meaning analysis because, under this interpretation, the bylaws would have violated the nonvariable statutory requirements for corporations, including banking corporations, to call a meeting and to amend bylaws at the time of the bylaws' adoption.

The bylaws document consists of four pages, preprinted with blanks for the corporation to fill in specific information. The form is structured for use by banks, which suggests that it may have been drafted and made commercially available in states in addition to Minnesota. In any event, at the time the bank adopted the bylaws in April 1936, Minnesota law required that a special meeting of a corporation (including a banking corporation) must be called "forthwith" when the president receives a request in writing by "one or more shareholders holding not less than one-tenth of the voting power of the shareholders." Minn.Stat. § 7492–24(III) (Supp.1934). As this dispute demonstrates, over seven-tenths of the ownership of the corporation has been denied a meeting. A corporation does not have power to adopt bylaws that violate existing law. *See* Minn. Stat. § 300.08, subd. 1(6) (1996) (corporation may provide bylaws for governance of its affairs, but only if consistent with law).

For these reasons, the district court properly ruled that a written request by the ownership of 72.96 percent of the common stock was sufficient to compel the president to call a special shareholders' meeting. A peremptory or conclusive writ was the proper method of compelling a meeting when the president had refused to call it even after advice of the bank's counsel that the request by the shareholders required that a meeting

be called. *See State ex rel. Lake Shore Tel. Co. v. DeGroat,* 109 Minn. 168, 176, 123 N.W. 417, 419 (1909) (providing that trial courts may issue writ of mandamus to require a corporation's director to call shareholders' meeting). Although any writ power should be used sparingly, the cases cited by the majority to suggest restriction on mandamus do not relate to requiring a corporation president to comply with authorized direction from stockholders. The district court properly followed the law and should be affirmed.