John D. ISAACS, Appellant,

v.

AMERICAN IRON & STEEL COMPANY, d/b/a American Iron & Supply Company, et al., Respondents.

No. A04–313.

Court of Appeals of Minnesota.

Dec. 28, 2004.

Sandra K. Kensy, St. Paul, MN; and William R. Skolnick, Skolnick & Associates, P.A., Minneapolis, MN; and James H. Gilbert, James H. Gilbert Law Group, P.L.L.C., Minnetonka, MN, for appellant.

Joseph W. Anthony, Mark D. Wisser, Anthony Ostlund & Baer, P.A., Minneapolis, MN, for respondents.

Considered and decided by LANSING, Presiding Judge; KALITOWSKI, Judge; and WRIGHT, Judge.

## OPINION

LANSING, Judge.

In this dispute among shareholders of a family-owned corporation, the district court ruled on cross-motions for summary judgment; directed entry of final judgment on several claims in accordance with Minn. R. Civ. P. 54.02; and, relying on a stipulated agreement, referred the remaining claims for determination by a court-appointed referee. John Isaacs appeals the summary-judgment dismissal of his claims for relief under Minn.Stat. §§ 302A.467 and .751 (2002) for improper and prejudicial conduct in violation of corporate bylaws. Although we analyze the issues differently from the district court, we conclude that dismissal was appropriate and affirm as modified. We decline to address John Isaacs's motion to strike and motion to vacate. We also decline to address Mindy Odegard and Fred and Rhea Isaacs' motion to dismiss.

## FACTS

Fred Isaacs owns fifty-four percent of American Iron & Steel Company. Fred Isaacs's son, John Isaacs, owns the remaining forty-six percent. Before July 2002, American Iron had two board members—Fred and John Isaacs. John Isaacs was also employed with American Iron and has held the positions of president, CEO, COO, and treasurer.

At the July 2002 shareholder meeting, Fred Isaacs voted his majority shares to expand the board of directors from two members to four and to elect Mindy Odegard, his daughter, and Rhea Isaacs, his wife, to the new directorships. John Isaacs voted against the expansion of the board and the election of Odegard and Rhea Isaacs. Over a period of approximately five months, the newly constituted board demoted, suspended, and eventually terminated John Isaacs from his positions with the company.

In his complaint, John Isaacs alleged multiple claims arising from the July 2002 shareholder meeting and the board actions that followed. In part, he claimed that the election of Odegard and Rhea Isaacs violated American Iron's bylaws and demanded equitable relief under Minn.Stat. §§ 302A.467 and .751 (2002). Odegard and Fred and Rhea Isaacs moved for summary judgment on those claims.

On the section–302A.751 claim, the district court concluded that the bylaws had been violated, but the claim was moot because Fred Isaacs could have acted in a manner compliant with the bylaws and achieved the same result. The district

court dismissed the section–302A.467 claim for failure to specify which section of chapter 302A had been violated.

The district court ordered entry of judgment on these issues under Minn. R. Civ. P. 54.02, and John Isaacs appeals. In accordance with a stipulation reached among all of the Isaacs and Odegard, the claims and counterclaims that survived summary judgment were tried to a court-appointed referee.

## ISSUES

I. Did the district court err in dismissing the minority shareholder's claim for relief under Minn.Stat. § 302A.751 (2002), based on a claim of bylaws violation?

II. Did the district court err in dismissing the minority shareholder's claim for equitable relief under Minn.Stat. § 302A.467 (2002), based on claims of chapter 302A violations?

III. Should this court grant the motions filed pending appeal?

## ANALYSIS

### I

John Isaacs contends that the district court erred in denying relief under section 302A.751 (2002) by dismissing, as moot, his claim that the July 2002 election of directors violated American Iron's bylaws. The issue of whether a cause of action is moot is a legal issue, which we review de novo. *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999). Generally, an issue may be dismissed as moot if an event occurs that resolves the issue or renders it impossible to grant effective relief. *State v. Rud,* 359 N.W.2d 573, 576 (Minn.1984).

The district court concluded that the July 2002 election violated American Iron's bylaws. Nevertheless, the district court dismissed the claim for relief on the grounds that Fred Isaacs could have achieved the same results without violating the bylaws. But the doctrine of mootness looks towards actual occurrences, not mere speculation on events that could have happened. Thus, we agree that the doctrine of mootness does not justify dismissal of the claim. But because we conclude that the plain meaning of the bylaws applied to the undisputed facts does not support the claim, we agree that dismissal was, nonetheless, required.

Bylaws establish rules for a corporation's internal governance and may contain any provision relating to management of the business that is not inconsistent with state law. Minn.Stat. § 302A.181, subd. 1 (2002). Bylaws have the same force and effect as provisions of a corporation's charter or articles of incorporation and must be obeyed by the corporation and its directors, officers, and shareholders. *Diedrick v. Helm,* 217 Minn. 483, 497, 14 N.W.2d 913, 921 (1944).

We construe bylaws according to rules governing the construction of contracts and statutes. *See Mauer v. Kircher,* 587 N.W.2d 512, 514–15 (Minn.App. 1998) (applying rules of contract and statutory construction to the interpretation of a bank's bylaws), *review dismissed* (Minn. July 29, 1999). A court's primary role in interpreting a contract is to "ascertain and give effect to the intention of the parties." *Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.,* 470 N.W.2d 118, 122–23 (Minn. 1991). When intent is expressed in unambiguous words, those words are to be given their plain and ordinary meaning. *Minneapolis Pub. Hous. Auth. v. Lor,* 591 N.W.2d 700, 704 (Minn.1999); *see also* Minn.Stat. § 645.08, subd. 1 (2002) (stating

words and phrases in statutes must be construed according to common and approved usage).

Section 3.2 of American Iron's bylaws provides that shareholders may increase the number of directors at regular shareholder meetings, and that directors serve indefinite terms:

The Board of Directors shall consist of one or more members. At each regular meeting, the shareholders shall determine the number of directors; provided, that between regular meetings the authorized number of directors may be increased or decreased by the shareholders or increased by the Board of Directors. Each director shall serve for an indefinite term that expires at the next regular meeting of shareholders, and until his successor is elected and qualified, or until his earlier death, resignation, disqualification, or removal as provided by statute.

Section 3.3 explains the procedure by which vacancies on the board of directors are filled:

Vacancies on the Board of Directors may be filled by the affirmative vote of a majority of the remaining members of the Board, though less than a quorum; provided, that newly created directorships resulting from an increase in the authorized number of directors shall be filled by the affirmative vote of a majority of the directors serving at the time of such increase. Persons so elected shall be directors until their successors are elected by the shareholders, who may make such an election at the next regular or special meeting of the shareholders.

■ The district court observed that an increase in the number of directors by shareholders under section 3.2 creates a vacancy. The district court then looked to the provision for vacancies, under section

3.3, that allows vacancies to be filled by "a majority of the directors serving at the time of such increase." Applying these two sections, the district court concluded that the bylaws created exclusive authority in the board initially to fill a newly created directorship. But this reading isolates these phrases from their context. We must ascertain the parties' intent "not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the contract ... as a whole." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 324 (Minn.2003) (alteration in original) (quoting *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn.1979)).

The bylaws explicitly establish the following procedures: (1) directors serve indefinite terms that expire at each regular shareholder meeting; (2) shareholders must determine the number of directors at each regular meeting, and may increase or decrease the number of directors at any time; (3) the board *may* fill vacancies; and (4) a director initially elected by the board's exercise of its permissive power to fill vacancies serves only until shareholders act to choose a successor. Read together, the bylaws demonstrate the intent of its drafters: shareholders have the right to determine the board's composition, including the number of positions and the individuals who hold those positions, at each shareholder meeting. Thus, shareholders have the plenary power to fill newly created directorships, and the board has interstitial power to fill vacancies between shareholder meetings. *See id.* (stating words and phrases must be viewed in context and not in isolation); *see also Haft v. Dart Group Corp.*, 841 F.Supp. 549, 564

(D.Del.1993) (stating courts should not rewrite plain language of contractual provision, even to supply perceived omission).

Our reading of American Iron's bylaws comports with the obvious and essential right of shareholders to elect directors:

> It is doubtful if any ... shareholder right is any more important than the right to vote for the election of the directors and trustees of a corporation who carry on and conduct the business of the corporation, elect or appoint its officers and agents, and in a large measure, determine the manner in which the corporation operates.

*Minn. Baptist Convention v. Pillsbury Acad.,* 246 Minn. 46, 61, 74 N.W.2d 286, 296 (1955). Our reading also comports with the Minnesota Business Corporations Act, which provides, "[v]acancies on a board resulting from newly created directorships *may* be filled by the affirmative vote of a majority of .... directors," and each director so elected serves only until his or her successor is elected by shareholders. Minn.Stat. § 302A.225(a)(2), (b) (2002) (emphasis added). The right of shareholders to act before directors to fill such vacancies is implied, albeit not explicitly granted, by the right of shareholders to elect directors. *See* 18 John H. Matheson & Philip S. Garon, *Minnesota Practice* § 3.18, at 74 (1996) (stating same).

It is undisputed that American Iron's shareholders, by majority vote, created two new directorships at the July 2002 shareholder meeting and elected Mindy Odegard and Rhea Isaacs to the newly created positions. As we have concluded, under the plain meaning of American Iron's bylaws, shareholders may determine the composition of the board at each shareholder meeting. The shareholders' course of conduct at the July 2002 meeting did not violate American Iron's bylaws, and

John Isaacs failed to establish the foundational fact on which he rests his section–302A.751 bylaws-violation claim. Although we conclude that the district court dismissed John Isaacs's claim under an incorrect application of the mootness doctrine, we affirm as modified because the district court arrived at the correct result. *See Brecht v. Schramm,* 266 N.W.2d 514, 520 (Minn.1978) (stating, "[i]f the trial court arrives at a correct decision, that decision should not be overturned regardless of the theory upon which it is based").

## II

■ For several independent reasons, we also conclude that the district court properly dismissed John Isaacs's section–302A.467 claim. The dismissed claim alleged that Odegard and Fred and Rhea Isaacs "violated the provisions of Chapter 302A," and therefore John Isaacs was entitled to equitable relief under Minn.Stat. § 302A.467 (2002). In dismissing the claim, the district court reasoned that John Isaacs did not allege that a specific section of chapter 302A had been violated, and the claim was impermissibly vague:

> Count Four does not specify which sections of the voluminous Minn.Stat. § 302A Fred is alleged to have violated.... Section 302A.467 does not identify a possible type of mischief but allows for certain remedies if a type of mischief is proven.... Within the chapter for which the remedies identified in Minn. Stat. § 302A.467 apply, there are myriad offenses, some related, some unrelated.

On appeal, John Isaacs argues that the district court's reasoning was flawed because the dismissed claim realleged the initial eighty-six paragraphs of the complaint that listed various claims of infractions.

We agree with the district court that the claim was broad, and we also agree that

section 302A.467 is directed more at a remedy than at providing a ground for a claim. We find it significant that John Isaacs's substantive claims under section 302A.751 that were not resolved through summary judgment were fully tried to a referee. Thus, the dismissal of a duplicative request for equitable relief under section 302A.467 does not affect substantial rights. *See* Minn.Stat. § 302A.467 (providing that if a corporation, officer, or director violates chapter 302A a court may "grant any equitable relief it deems just and reasonable in the circumstances and award expenses, including attorneys' fees and disbursements" to the complaining shareholder).

At oral argument, John Isaacs argued that, even though both sections 302A.467 and .751 provide for equitable relief, because only section 302A.467 provides for "injunctive relief," his claims were affected by the dismissal of the section–302A.467 claim. But both sections provide for "*any* equitable relief [a court] deems just and reasonable." Minn.Stat. §§ 302A.467, .751 (emphasis added). John Isaacs cites no authority for the proposition that injunctive relief may be granted only under section 302A.467, and we have found none. Additionally, we note that John Isaacs sought emergency injunctive relief, but the district court denied that request on its merits for failure to show irreparable harm and John Isaacs does not contest that decision. Accordingly, the later dismissal of the claim based on section 302A.467 did not prejudice John Isaacs.

■ Finally, John Isaacs argues that his claim for equitable relief under section 302A.467 should have been allowed as a remedy for his claim for violation of American Iron's bylaws. But this claim alleged a violation of the *company's* bylaws, not a violation of chapter 302A for which equitable relief under section 302A.467 may be

requested. Furthermore, we have concluded that the bylaws were not violated. The district court did not err in dismissing John Isaacs's claim based on section 302A.467.

### III

During the pendency of this appeal, the litigants filed various motions. John Isaacs moved to strike documents that postdated the order appealed, that were included in Odegard and Fred and Rhea Isaacs' appendix, and that were relied upon in their brief. Because we have not relied on the contested material in reaching our decision, it is unnecessary to address the merits of this motion. *See Berge v. Comm'r of Pub. Safety,* 588 N.W.2d 177, 180 (Minn.App.1999) (finding it unnecessary to address merits of motion to strike when appellate court did not rely on objected-to portions).

John Isaacs also moved to vacate a referee's report and district court order filed after the district court's summary judgment ruling and before oral argument on the appeal, contending that the district court was divested of jurisdiction. *See* Minn. R. Civ.App. P. 108.03 (suspending district court's jurisdiction, pending appeal, unless the matter before it is independent from the judgment from which appeal is taken). Finally, Odegard and Fred and Rhea Isaacs moved to dismiss this appeal as moot. Because we affirm the judgment from which this appeal is taken, we decline to consider the merits of these arguments.

### DECISION

We interpret bylaws according to their plain meaning and in accordance with the obvious purpose of the document as a whole and conclude that Odegard and Fred and Rhea Isaacs did not violate American Iron's bylaws. The district

court properly dismissed John Isaacs's by-law-violation claim but did so on an incorrect legal theory. We therefore affirm as modified. We also conclude that the district court did not err under section 302A.467. We decline to address motions filed by the parties pending this appeal.

**Affirmed as modified.**