CARL BOLANDER & SONS CO., INC. v.
UNITED STOCKYARDS CORPORATION.

215 N. W. 2d 473.

March 1, 1974—No. 44109.

*LeVander, Gillen, Miller & Magnuson* and *Paul A. Magnuson,* for appellant.

*Grannis & Grannis* and *Vance B. Grannis,* for respondent.

Heard before Knutson, C. J., and Otis, MacLaughlin, and Mulally, JJ., and considered and decided by the court.

EDWARD D. MULALLY, JUSTICE.*

This is an appeal from an order of the trial court denying the motion of plaintiff, Carl Bolander & Sons Co., Inc., for amended findings of fact or for a new trial.

On May 6, 1970, defendant, United Stockyards Corporation, contacted Bolander and invited a bid for the excavation work to be performed incident to the construction of a warehouse on property owned by Stockyards. When completed, the building was to be leased to Farwell, Ozmun, Kirk & Co.

The land upon which the building was to be built is 10 acres of a 17-acre tract located at the southeast corner of Armour and Stockyards Road in South St. Paul, Minnesota. The land had previously been used as a manure and refuse dump for the stockyards.

Stockyards wanted the poor soil excavated from the 10-acre plot and replaced with good fill. The site was to be ready for building to commence about August 1, 1970.

At the May 6, 1970, meeting Stockyards gave to Bolander a

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

copy of a report of soil tests performed by Soil Exploration Company. The report of soil conditions had been received by Stockyards on February 20, 1970, and contained the results of five 2-inch borings of the soil made on the 10-acre site. One bore was made in each corner and one in the center. The parties agree that the test bores were correct as to the depth and locations tested; that Bolander made no additional tests; and that the test report did not warrant conditions below the depths of the borings or that the bores were necessarily typical of the entire site.

On May 11, 1970, Bolander delivered to Stockyards a written offer [1] to excavate a site for a 412,200-square-foot building which

---

[1] "We propose to perform various items of work for the construction of a warehouse building on your property located south of Armour Ave. and east of Stockyards Road in South St. Paul, Minnesota.

"The building will have approximately 412,200 square feet of floor space and you have decided to remove unsuitable soil and replace it with dredged river sand rather than construct it on piling. Using your soil borings for reference and your desire to construct the building more to the east than the west side of the site, some 140,000 to 170,000 cubic yards of unsuitable material must be removed to expose sand or limestone. All disposal to be on your property or American Hoist property.

"We offer the following unit prices as a basis of payment.
1. Subcut Excavation—Thirty Two Cents ($0.32) per cubic yard.
2. Haul to Site No. 1 (West of Stockyards Road)—Twenty Seven Cents ($0.27) per cubic yard.
3. Haul to Site No. 2 (Manure Dump)—Twenty Seven Cents ($0.27) per cubic yard.
4. Haul to Site No. 3 (American Hoist site south of T. H. 494)— Thirty Nine Cents ($0.39) per cubic yard.

"The prices do not include any leveling or handling of dumped material at any of the dump sites and this work will be done by our forces on an hourly basis or by your forces but in either event enough equipment will be maintained so our hauling equipment will not be delayed.

"Sewer relocation, railroad track removal and power line relocation work will be performed by others or treated as extra work.

"Marine fill to be furnished and placed by others.

"Work can be started within Five (5) days after notice to proceed is

would involve the removal of from 140,000 to 170,000 cubic yards of unsuitable material at a cost of either 59¢ per cubic yard or 71¢ per cubic yard, depending on the location of the dump site used. Further, Bolander offered a "firm not to exceed the figure" of $105,000 "assuming that no extreme depth pockets of unsuitable material exists that do not show up in your soil borings."

Shortly thereafter Stockyards and Bolander again met and Bolander was informed that the size of the proposed building was to be increased to 428,000 square feet.

On May 14, 1970, Bolander made a second written offer almost identical in form to the May 11 letter, but increasing the size of the building to 428,000 square feet and increasing the price to $107,000. The unit price clauses and the extreme depth pockets reference remained intact.

On May 26, 1970, Stockyards sent Bolander a written authorization to begin excavating. This completed the written memoranda of the agreement between the parties.

Bolander moved equipment in and began work.

During the third week in June Bolander became aware that more material than had been anticipated would have to be removed and subsequent changes in the building plans required the removal of an additional 11,000 cubic yards of material.

The excavation was completed on August 7, 1970, and Bolander billed Stockyards for 258,980 cubic yards. Stockyards paid what it contended was the contract price of $107,000, and Bolander commenced this action to recover an additional $45,798.20 for the removal of 89,000 cubic yards of material.

---

received and will be completed in approximately one month's time.

"Based upon a 428,000 square foot building and assuming that no extreme depth pockets of unsuitable material exists that do not show up in your soil borings, we offer a firm not to exceed the figure of One Hundred Five Thousand Dollars ($105,000) with material disposed at dump site No. 1 or 2.

"Proper supervision, labor and equipment will be furnished to assure a good job and to meet your tight construction schedule."

The trial court found that Bolander was paid the maximum "not to exceed sum" due under the contract and granted Bolander judgment for $6,490 for the removal of the additional 11,000 cubic yards of material made necessary by the changes in the building plans. Bolander appealed from the court's denial of its motion for amended findings or for a new trial.

Bolander contends that the "firm not to exceed" price was qualified and conditioned upon there being "no extreme depth pockets."

Cone soundings showed that 253,000 cubic yards had been removed, and Bolander found by a transit check that the figure was 259,000 cubic yards. This exceeded the maximum contract estimate by approximately 90,000 cubic yards and was 53 percent over what the original test report showed. The boring data indicated that Bolander would have to dig to an average depth of 9½ feet. Actually, the excavation went to an average depth of 16 feet.

The trial court found that Stockyards had fully disclosed to Bolander all information it possessed; that a "firm not to exceed" price was contemplated by the parties; that Bolander was paid the maximum "not to exceed sum" of $107,000 due under the contract providing for excavation; and that the terms of the contract were unequivocally clear. In a memorandum acompanying its order, the court added that any loss resulting from error in judgment in making this proposal must be assumed by Bolander. The trial court made no finding of fact as to the amount of material necessarily removed from the site or whether or not any extreme depth pockets did in fact exist.

Bolander asserts the plain meaning of the contract to be that the "not to exceed firm" offer is conditioned upon a finding of "no extreme depth pockets." We agree.

The contract provision in dispute reads as follows:

"Based upon a 428,000 square foot building and assuming that no extreme depth pockets of unsuitable material exists that do not show up in your soil borings, we offer a firm not to exceed

figure of One Hundred Seven Thousand Dollars ($107,000.00) with material disposed at dump site No. 1 or 2."

This provision can only be construed as an express condition precedent, which qualifies Bolander's firm offer of $107,000.

Where the language used in a contract is plain and unambiguous, there is no opportunity for interpretation or construction. 4 Williston, Contracts (3 ed.) § 609. "A contract is to be interpreted to give effect to the mutual intention of the parties at the time of contracting, and in so doing the language used governs if it is clear and does not involve an absurdity. The meaning of a contract is to be ascertained from the writing alone, if possible, the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written." Hicks v. Mid-Kansas Oil & Gas Co. 182 Okla. 61, 76 P. 2d 269 (1938). Where the words of a written contract are plain and unambiguous, its meaning should be determined in accordance with its plainly expressed intent.

A condition precedent has been defined as "any fact except mere lapse of time which must exist or occur before a duty of immediate performance by the promisor can arise." Simpson, Contracts (2 ed.) § 144. See, also, 5 Williston, Contracts (3 ed.) § 666A; Corbin, Contracts (1 vol. ed.) § 628. As Williston points out, there are no particular code words needed to form an express condition. 5 Williston, Contracts (3 ed.) § 671.

The words in the phrase, "assuming that no extreme depth pockets of unsuitable material exists that do not show up in your soil borings," are clear and unequivocal. Bolander did not assume the burden of the additional cost of excavating excess material found in extreme depth pockets not showing up in the soil borings. Bolander was expressly conditioning its firm offer.

While Stockyards may have, as it contends, desired a firm not to exceed price, the provision which was contained in the agreement into which it entered with Bolander clearly was conditioned upon the nonexistence of extreme depth pockets of unsuitable material.

434

Whether there were or were not extreme depth pockets of unsuitable material encountered must be determined by the trial court as a fact. It cannot be done implicitly or by implication as contended by Stockyards. The trial court is entitled to assistance in construing the precise meaning of the business terms contained in the agreement and may consider parol evidence for that purpose. Koch v. Han-Shire Investments, Inc. 273 Minn. 155, 140 N. W. 2d 55 (1966); 30 Am. Jur. 2d, Evidence, § 1075; Simpson, Contracts (2 ed.) §§ 98, 101.

The matter must be remanded to the trial court and a fact determination made, either upon evidence already before the court or upon such additional evidence as the court may deem necessary, as to whether or not plaintiff encountered extreme depth pockets.

If the court finds that there were extreme depth pockets, it should then give no effect to the firm not to exceed price and should instead use the unit price system found in the contract as a basis of payment. If the lower court finds there were extreme depth pockets, it must also, of course, make a factfinding as to the number of cubic yards necessarily removed by Bolander from the site.

If the lower court finds that there were no extreme depth pockets encountered in this excavation, it should award Bolander the lump sum contract price of $107,000 plus $6,490 for the additional 11,000 cubic yards excavated after this contract was agreed upon.

The findings of the trial court are vacated, and the matter is remanded to that court for further proceedings consistent with this opinion.

Reversed and remanded.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

MR. JUSTICE KELLY took no part in the consideration or decision of this case.