George E. HEHL, Respondent,

v.

ESTATE OF Edward M. KLOTTER, Deceased, et al., Defendants,

Peter Flint Fox, et al., Respondents,

G & R Construction, Inc., Appellant.

No. 48235.

Supreme Court of Minnesota.

April 6, 1979.

J. Derek Amerman and William J. Keefer, Minneapolis, for appellant.

Allan T. Quello, Wayzata, for Hehl.

Lindquist & Vennum and J. Michael Dady, Minneapolis, for Fox, et al.

Heard before PETERSON, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

The undisputed facts in this case put in issue the priority of two purchase agreements to the same property located at 1250 Briar Street, Orono, Minnesota. At approximately 7 p. m. on December 21, 1976, Shirley Breitner, an agent of Fox-Herfurth Real Estate, Inc., and Paul Willette, an agent of Mann Realty, went to the home of Craig F. Klotter, personal representative for the estate of his deceased father, and presented Klotter with a purchase agreement (hereafter G & R agreement) signed by defendant, G & R Construction, Inc. (hereafter G & R), offering to pay Klotter $16,000 for the Briar Street property. Klotter insisted on material changes in the G & R agreement. Willette made the changes; Klotter thereupon initialed them, signed the agreement, and returned it to Willette. Both agents then left.

At approximately 8 p. m., Breitner telephoned plaintiff, George E. Hehl, and told him that he might be able to purchase the Briar Street property for an offer in the low $16 thousands because an offer presented on the property had been rejected. At approximately 8:30 p. m., Hehl arrived at the Breitner residence. Breitner telephoned Klotter and asked if he would be willing to accept a better offer. Klotter

expressed concern regarding the G & R agreement and requested a cancellation of it. Breitner assured Klotter that she would obtain the cancellation. Klotter authorized Breitner to talk to Willette and thereby to cancel Klotter's counteroffer.

At approximately 9 p. m., Willette telephoned G & R's president about the changes made by Klotter. G & R's president verbally accepted the changes, but the written document was not circulated and signed until approximately noon on December 23, 1976. The verbal acceptance took place before either Willette or G & R was notified that Klotter wished to withdraw his counteroffer.

At approximately 10 p. m., Willette telephoned Breitner. Willette informed Breitner that G & R had verbally accepted Klotter's counteroffer. Breitner then told Willette that Klotter wanted to cancel his counteroffer and that she would draw up a letter of cancellation and deliver it to Willette's office the following morning.

Thereafter, Breitner drew up a second purchase agreement (hereafter Hehl agreement) with plaintiff for $200 more than the G & R agreement, and Hehl signed it. The Hehl agreement was delivered to the Klotter home that evening but was dated December 22, 1976, the date upon which Klotter said he would sign the agreement.

The Hehl agreement contained the following protective provision, "Subject to receipt of cancellation papers regarding purchase agreements dated Dec. 9 and Dec. 21, 1976."[1] Klotter testified that he was apprehensive about signing the Hehl agreement and that he would not have signed it without the protective provision.

Klotter signed the Hehl agreement at 6 a. m. on December 22, 1976. At the same time, he signed a "CANCELLATION OF COUNTER OFFER TO PURCHASE AGREEMENT." Breitner collected the documents that morning and delivered the original copy of the cancellation notice to Mann Realty. Willette received the cancellation notice at 11 a. m. At about noon on December 23, G & R's president initialed the changes in the G & R agreement after being shown the notice, which he refused to sign.

Klotter testified that he cancelled the Hehl agreement because he never received the documents which were to cancel the G & R agreement. He is now willing to sell the Briar Street property to G & R according to the terms of the G & R agreement, as modified by him.

The trial court decided that the Hehl agreement was entitled to priority on the grounds that Klotter's material changes in the G & R agreement constituted a counteroffer and that the purchase agreement was not accepted *in writing* until after the Hehl agreement had been offered and accepted. The court reasoned that the G & R agreement was not a valid purchase agreement because defendant had only *orally* accepted Klotter's changes at the time the Hehl agreement was consummated, and thus there was no question whether cancellation of the G & R agreement was a condition precedent to Klotter's acceptance of the Hehl agreement.

We hold, to the contrary, that cancellation of the G & R agreement was a condition precedent to the Hehl agreement and that because the G & R agreement was never formally cancelled, Klotter was entitled to cancel the Hehl agreement and enter into an agreement with G & R. We accordingly reverse.

■ A condition precedent is any fact except mere lapse of time which must exist before a duty of immediate performance by the promisor can arise. *Carl Bolander & Sons v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974). The Hehl agreement contained this express provision: "Subject to receipt of cancellation papers regarding purchase agreements dated Dec. 9 and Dec. 21, 1976." Use of the language, "subject to," indicates that can-

---

1. Both the G & R and the Hehl agreements contain reference to a December 9, 1976, purchase agreement. However, that purchase agreement was null and void, due to a lack of financing, and is irrelevant to this litigation.

cellation of the G & R agreement was intended to be a condition precedent to the Hehl agreement. See, Calarmari and Perillo, Contracts (2 ed.) § 11–7. It is uncontroverted that defendant G & R never signed the "CANCELLATION OF COUNTER OFFER TO PURCHASE AGREEMENT" and, therefore, that Klotter never received the documents which formally cancelled the G & R purchase agreement.

The trial court ruled that no question arose whether cancellation of the G & R agreement was a condition precedent, because there was no valid purchase agreement between Klotter and G & R at the time the Hehl agreement was executed. The ruling was apparently based upon the trial court's belief that the law of this state requires that a written offer to sell real estate must be accepted in writing and that a mere oral acceptance is insufficient under the statute of frauds, Minn.St. 513.05. Plaintiff adds the further argument that there was no purchase agreement dated December 21, 1976, since the G & R agreement was dated December 22, 1976.

We are not persuaded by these views. The words of the provision in the Hehl agreement are plain and unambiguous and their meaning should be determined in accordance with their plainly expressed intent. *Carl Bolander & Sons v. United Stockyards Corp., supra.* The clear meaning of the provision is that Klotter wanted to receive a formal writing indicating cancellation of the G & R agreement as modified by him. The initial offer by G & R and the counteroffer caused by the material changes made by Klotter are on a document entitled, "PURCHASE AGREEMENT." There is no indication in the wording of the provision that the condition depended upon whether the G & R agreement was legally enforceable. A contracting party has wide latitude in determining what conditions he will impose before entering into a contract. Klotter never received a fully executed notice of cancellation by G & R because G & R's president never signed such a document.

Even if the words of the provision were regarded as ambiguous, parol evidence demonstrates that Klotter was referring to the formal cancellation of the G & R agreement. Klotter's testimony indicates he was apprehensive about signing the Hehl agreement without some type of protection being written into it, and the protection he demanded was formal cancellation of the G & R agreement. Klotter testified that the "subject to" provision stated the protection he desired and that he would not otherwise have signed the Hehl agreement. The condition precedent demanded by Klotter was never satisfied.

A similar analysis answers plaintiff's additional contention. Plaintiff is correct when he argues there was no purchase agreement dated December 21, 1976. The G & R agreement is dated December 22, 1976. Since there was no purchase agreement dated December 21, 1976, parol evidence can be admitted to identify the purchase agreement being referred to. All parties agree that the provision in the Hehl agreement refers to the G & R agreement dated December 22, 1976.[2]

Reversed.

OTIS, J., took no part in the consideration or decision of this case.

---

**2.** Because of our holding on the condition precedent issue, we need not decide the validity of G & R's contention that oral acceptance of Craig F. Klotter's counteroffer was sufficient to create a binding contract. We have, in one line of decisions, enunciated the rule that a written offer of real estate must be accepted in writing, *Lake Company v. Molan*, 269 Minn. 490, 496, 131 N.W.2d 734, 739 (1964), which places us among a small minority of jurisdictions adhering to that rule. See, generally, 30 A.L.R.2d 972, §§ 1, 2, and 4. We acknowledge that this rule may be inconsistent with our decisions in *Greer v. Kooiker*, Minn., 253 N.W.2d 133 (1977), and *Western Land Assn. v. Banks*, 80 Minn. 317, 83 N.W. 192 (1900), and is contrary to authoritative writing in this field of law. See, e. g., 2 Corbin, Contracts, § 503.