**LANESBORO STATE BANK,**
Respondent,

v.

**Lee FISHBAUGHER, et al., Appellants.**

**No. C8-85-1674.**

Court of Appeals of Minnesota.

March 11, 1986.

David A. Joerg, Joerg & Benson, Ltd., Preston, for respondent.

James H. Turk, Blethen, Gage & Krause, Mankato, for appellants.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Lanesboro State Bank sued Lee & John's Livestock, claiming conversion of livestock which secured a bank loan to Richard Hall. The trial court granted the bank's motion for summary judgment and entered a money judgment of $12,293.56 against Lee & John's, holding that the bank's security interest was valid and enforceable and that the bank was entitled to 75% of the proceeds of sales made by Lee & John's in 1981 and 1982. Lee & John's appeals, claiming that: (1) the security agreement between the bank and farmer Hall was void because Hall could not legally assign

partnership property to secure his personal debt, and (2) if enforceable, the agreements are only enforceable as to a one-half interest in the livestock sold. We affirm in part and modify in part.

## FACTS

Farmer Richard Hall signed two security agreements in 1979 to secure loans made to him by Lanesboro State Bank. At the time, Hall and his father were involved in an informal partnership relative to certain farm property including hogs. The partnership arrangement ended sometime in 1980 when Hall acquired or took over his father's interest in the hogs and other property.

Joan Sveen, a bank loan officer, was aware that Hall and his father each had a one-half interest in certain pieces of farm property including the livestock. Therefore, she inserted the language "Undivided one-half interest in" immediately before the language in the security agreement granting the bank a security interest in Hall's livestock. The agreement provided that:

Debtor hereby grants Secured Party a security interest * ¹ * in the following property * * *:

* * * * * *

Undivided one-half interest in .

All farm products of Debtor, whether now owned or hereafter acquired, including but not limited to (i) all poultry and livestock and their young, products thereof and produce thereof * * *.

The bank perfected the security interest created in the agreements by filing financing statements with the Fillmore County Recorder. These statements covered all livestock owned by Hall.

During 1980–82 Hall sold hogs covered by the security agreement to Lee & John's Livestock, received the proceeds but did not pay them over to the bank. Lee & John's never checked the county recorder's office for filed financing statements covering the livestock they purchased from Hall and later re-sold.

The bank sued Lee & John's for converting livestock which secured loans it made to Hall. Claims regarding sales made in 1980 were settled. The bank subsequently obtained a summary judgment in the amount of $12,293.56, 75% of the proceeds from the sales made in 1981 and 1982.

Lee & John's moved for amended findings. The trial court clarified its findings but did not change its conclusions. Lee & John's appeals from the judgment.

## ISSUES

1. Can Lee & John's Livestock challenge the validity of a security agreement between Lanesboro State Bank and Richard Hall?

2. Did the trial court err in ruling that the bank held a 75% interest in the livestock sold to Lee & John's in 1981 and 1982?

## ANALYSIS

*Standard of review:*

■ This court must determine whether there are genuine issues of fact to be litigated and whether the trial court erred in applying the law. *See Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

1. *Validity of security agreement:*

■ Lee & John's argues that the security agreement between the bank and Hall is void and unenforceable because it violates Minn.Stat. § 323.24(2), which states that a partner's right in specific partnership property is not assignable. *See* Minn.Stat. § 323.24(2) (1982). The trial court ruled that Lee & John's cannot interfere with and repudiate the agreement between the bank and Hall.

We agree with the trial court. Although Minn.Stat. § 323.24(2) indicates that a partner cannot pledge partnership property for payment of private debts, Lee & John's cites no case which indicates that one who is not within the class of persons intended to be protected or assisted by the statute—

partners and partnership creditors—may challenge such an assignment. The cases cited by Lee & John's involve challenges by either a partner or partnership creditor who is prejudiced by a partner's assignment of partnership property to secure a private debt. *See Windom National Bank v. Klein*, 191 Minn. 447, 254 N.W. 602 (1934); *National Citizens' Bank of Mankato v. McKinley*, 129 Minn. 481, 152 N.W. 879 (Minn.1915).

Here, Lee & John's was disadvantaged by its own failure to check the county recorder's office for a financing statement indicating the hogs secured a loan from the bank. It was not disadvantaged because the partnership assets are inadequate to cover claims of partner's creditors.

■ The purposes of the Uniform Partnership Act would not be served by allowing a third party who was prejudiced by its own inaction, rather than by a partner's action, to challenge an assignment of partnership property. As a federal district court in Virginia has noted, the Uniform Partnership Act was drafted because:

> If the law recognized the right of a partner to assign his right in particular partnership property to a third person, the assignee would pro tanto become a partner, since he would have the right to possess the property for a partnership purposes irrespective of the desires of the other partners. But partnership is a voluntary relation, and the other partners cannot have a new partner thrust upon them without their consent. See Commissioners Note, 7 Uniform Laws Anno. Partnership p. 145 (1949).

*In re Decker*, 295 F.Supp. 501, 509 (W.D. Va.1969), *aff'd per curiam sub nom. Woodson v. Gilmer*, 420 F.2d 378, 379 (4th Cir.1969). The Minnesota Supreme Court has also recognized the Act was designed to keep all partnership property intact for partnership purposes and creditors. *See Windom*, 191 Minn. at 451, 254 N.W. at 604.

Minn.Stat. § 336.9–201 indicates that a security agreement is effective *between* parties and *against* purchasers of collat-

eral and *against creditors*. *See* Minn.Stat. § 336.9–201 (1982). Here, the bank and debtor recognize the agreement as valid. The debtor is now the sole owner of all livestock, having bought out his father's interest after the agreements were signed. There is no possibility the debtor's partner can be prejudiced here by the assignment since the partners' relation has been dissolved. As the trial court noted:

> In conclusion, it is this Court's opinion that the Code's purpose could not be served by the defendants' argument. The notice filing system establishes a procedure by which the diligent creditor can insure that property is free of security interests. The defendants disadvantaged themselves by their complete failure to pursue a course of inquiry.

We uphold the trial court ruling that Lee & John's, is not in a position to challenge Hall's assignment of partnership property to the bank.

2. *Interpretation of Security Agreement:*

■ The language at issue in the security agreements grants the bank a security interest in collateral described as an "Undivided one-half interest in all farm products of Debtor, whether now owned or hereafter acquired * * *."

Lee & John's argues that if the agreements are enforceable, the trial court erred in recognizing the bank had any more than a 50% interest in the hogs sold by them. The trial court held that the bank had a 75% interest in the hogs sold in 1981–82 because Hall pledged an undivided one-half interest in the *partnership* property and pledged an undivided one-half interest in the one-half share acquired from his father. The memorandum accompanying the amended findings states:

> The coverage of the security agreement also turns on the intent of the parties. The record before the Court establishes that the parties construed the word "debtor" in the description of the collateral as the partnership. Thus, the plain-

tiff received an interest in an undivided one-half interest in all partnership hogs at the time of the security agreement. Subsequently, when the partnership was dissolved, M. Richard Hall became the sole "debtor" and received the second one-half interest in the partnership assets. Since only one-half of the after-acquired property became collateral, the plaintiff's interest was three-quarters of the total hogs.

■ We agree with Lee & John's that the plain and ordinary meaning of the contract language granted the bank a one-half interest in the debtor's property, or one-half of the proceeds of the hogs sold through Lee & John's in 1981–82. "Where the words of a written contract are plain and unambiguous, its meaning should be determined in accordance with its plainly expressed intent." *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974). "The meaning of a contract is to be ascertained from the writing alone, if possible, the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written." *Id.* (quoting *Hicks v. Mid-Kansas Oil & Gas Co.*, 182 Okl. 61, 76 P.2d 269 (1938)). The trial court erred in relying on testimony of the parties to determine the meaning of a contract provision that has a plain and ordinary meaning.

### DECISION

1. Lee & John's is not in a position to contest the validity of a security agreement between the bank and Hall.

2. The security agreement language granting the bank an undivided one-half interest in the debtor's livestock should be literally construed as granting the bank only a one-half interest in the hogs sold by Hall to Lee & John's in 1981–82 and not a 75% interest.

Affirmed in part, modified in part and remanded.