Jerome SCHOENBORN, Respondent,

v.

David F. SCHOENBORN, Appellant.

No. C1–86–1266.

Court of Appeals of Minnesota.

March 17, 1987.

Richard J. Rawlings, St. Cloud, for respondent.

John E. Mack, New London, for appellant.

Heard, considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

PARKER, Judge.

David Schoenborn appeals from the trial court's judgment dissolving his farming partnership with his brother, Jerome Schoenborn, contending the trial court erred in (1) dividing the personal property of the partnership in kind; (2) failing to compensate him for losses incurred during crop year 1984, when he farmed the partnership land alone; and (3) failing to compensate him for his brother's use of partnership property as collateral for personal loans. We affirm.

## FACTS

Jerome Schoenborn and his younger brother, David Schoenborn, are Stearns County farmers who entered into an oral partnership in 1978. Together they bought a tract of land and spent approximately $150,000 on various items of farm equipment. They farmed the land jointly, had a joint partnership checking account, and agreed to split the profits and losses evenly.

Sometime in 1979 Jerome went to a bank to obtain a personal loan. He testified that the banker asked for a list of all the equipment he used, "whether it's in partnership or solely owned;" that he gave the banker a list, with the notation "½" next to the partnership items; and that he then signed a blank security agreement to save another trip to the bank. He testified that it was not until the first renewal of the loan that he saw the security agreement for the first time and noticed that the partnership machinery was listed as collateral. He testified that he called this to the banker's attention, that at no time did the banker say he could not get the loan unless the partnership machinery was secured, and that he never intended to secure his brother's half of the partnership machinery. All payments were timely made and the loan fully paid off in August 1982.

Early in 1982, David became angry when he learned that the partnership property was listed as collateral for Jerome's personal loan, and he told Jerome that he wanted to buy him out by paying him half of the principal owed on the farmland. David then called a meeting, where it was decided that a complete accounting was needed from the beginning.

During the next two years the parties communicated through their accountant, attempting to complete the accounting. No funds were drawn from the partnership bank account after 1983. David deposited $1,703 into the account to purchase four items of partnership machinery for his own personal use, valuing them at original cost.

In February 1984 the accounting was completed and Jerome paid David $12,-737.65 in payment of "all machinery rental and services rendered * * * for the period beginning 1977 thru the present date."

During the 1983 crop year the land lay fallow under a government program. The parties disagreed on whether to farm the land during the 1984 crop year. Jerome did not want it seeded until it was divided between the two of them. Eventually, they decided to rent the land under a written lease. A prospective renter approached both brothers about renting the land and, with the understanding that he was soon to have a lease on the land, started picking rocks. Jerome saw him and told him not to do anything until he had a lease in hand. The accountant testified that David was supposed to give her the information necessary to draw up the lease, but did not do so. As a result, the lease was not written nor the land rented.

Late in May Jerome was driving by the land and saw David and his hired hands preparing the land for planting. He went home and returned to the land with the

partnership tractor. At trial the parties disputed whether Jerome came out to help or hinder the preparation of the seed bed. David and Jerome got into an argument, with David trying to take the tractor away from Jerome, and Jerome drove off. From then on, David did everything himself. He planted, tended and harvested the 1984 crop alone, without consulting Jerome in any way.

In March 1985, alleging that David had ousted him and usurped the entire partnership land for his own use, Jerome brought an action for partition and for an accounting for the 1984 crop year. David filed a counter-claim alleging that the land could not be partitioned, that there should be an equitable division of the machinery, that the partnership suffered a loss during the 1984 crop year due to Jerome's failure to help with the crop and his interference with the prospective renter, and asking for a share of all profits derived from use of the partnership property as collateral.

During negotiations, the parties stipulated to partition the real estate. They tried unsuccessfully to reach an equitable division of the partnership equipment, each submitting a list dividing the 23 items into two approximately equal units. David introduced the two lists into evidence at trial.

Based on the evidence, including the testimony of the parties and several witnesses, the trial court found that the partnership suffered no harm from Jerome's use of the partnership machinery as collateral, because the loans were never in default and had been timely paid; that David's claim for an accounting for years prior to 1984 was without merit, because his acceptance of $12,737.65 in February 1984 was in complete settlement of all differences; and that it was David who prevented the leasing of the land during crop year 1984 by failing to furnish the accountant with the information necessary to draw up the lease.

The court also found that David had usurped the partnership land during crop year 1984 and that Jerome had thereby suffered the loss of the use of the land as well as half the potential rental income,

while continuing to pay contract-for-deed installments and taxes; that the partnership was dissolved when David usurped the land, and it was effectively dissolved when he accepted the $12,737.65 payment; that David had purchased four items from the partnership and that the remaining equipment should be divided in kind, largely in accordance with Jerome's proposal.

The trial court concluded that as the partnership was dissolved prior to the 1984 crop year, David should absorb any 1984 crop year losses; that all disputes prior to crop year 1984 had been resolved by Jerome's $12,737.65 payment to David; that the equipment was to be divided as in the findings; and that any disparity claimed by David was equalized by Jerome's losses due to the usurpation of the land during the 1984 crop year.

## ISSUES

1. Did the trial court err in dividing the partnership's personal property in kind?

2. Did the trial court err in refusing to compensate David for losses suffered during the 1984 crop year?

3. Did the trial court err in refusing to compensate David for Jerome's use of the partnership property as collateral for personal loans?

## DISCUSSION

### I

■ Although it was David who first suggested an equitable division of the partnership equipment in his counterclaim, he now contends the trial court erred in making such a division. He contends he has an absolute right to demand a sale, citing Minn.Stat. § 323.37, subd. 1 (1986), which provides that each partner in a dissolution "may have the partnership property applied to discharge [the partnership's] liabilities, and the surplus applied to pay *in cash* the net amount owing to the respective partners" (emphasis added). However, this statute does not create an absolute right to a sale. In Minnesota a trial court has the

equitable power to divide the partnership property in kind so long as it is not liable for any partnership debts and can be divided without prejudice to the owners. *Bagg v. Osborn*, 169 Minn. 126, 128, 210 N.W. 862, 863 (1926). *See also* Minn.Stat. § 323.-05 (1986) (uniform partnership act provision recognizing the rules of equity).

■ At oral argument David contended the personal property must be sold to pay off the contract for deed on the land. However, the parties had already agreed before trial to partition the land. Therefore, the land and any debts owing on it are not at issue here. At any rate, personal property is not lienable for nonpayment of contract-for-deed installments, and there is no evidence of a promissory note.

■ David contends the division is inequitable because the trial court valued the property according to its original cost, which did not accurately reflect the values at the date of trial. However, cost value was the only measure of value before the court, being the value that both David and Jerome used in preparing the lists that David himself introduced into evidence. Since no credible evidence of market value was offered, the trial court properly made an equitable division based on the only value before it.

Finally, we note that even at trial David was willing to accept a division in kind if made according to his own proposal, which was quite similar to the one used by the trial court. Each proposal divided 23 items of equipment into two units of approximately $75,000, each dominated by the most valuable item, a tractor which cost $57,840.

■ Under these facts, the trial court was acting in the proper exercise of its equitable powers in dividing the partnership's personal property in kind.

## II

■ David next contends the trial court erred in failing to apportion the 1984 crop losses between the partners. However, the evidence sustains the court's finding that David usurped the land before the 1984 crop year and that his actions constituted a de facto dissolution of the partnership. Therefore, we agree that any debts or profits attributable to crop year 1984 are David's.

## III

Finally, David contends the trial court erred in failing to compensate him for Jerome's use of the partnership property as collateral for personal loans, citing Minn. Stat. § 323.20 (1986), which provides:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by that partner without the consent of the other partners from * * * any use by that partner of [the partnership's] property.

■ There is no evidence that Jerome benefitted from using the partnership property as collateral. Indeed, it appears to have been unintentional. His testimony that he had already provided sufficient collateral for his loans is undisputed, and there is no indication in the record that he was able to secure a lower interest rate because of the additional collateral.

Nor was the partnership damaged, even potentially, by the listing of its property as collateral, because a partner's right in specific partnership property is not assignable and any attempt to assign such property is void. Minn.Stat. § 323.24(2) (1986); *Windom National Bank v. Klein*, 191 Minn. 447, 451, 254 N.W. 602, 604 (1934); *Lanesboro State Bank v. Fishbaugher*, 383 N.W.2d 349, 351 (Minn.Ct.App.1986). Therefore, we conclude that the trial court did not err in refusing to compensate David for Jerome's use of the partnership property as collateral for his personal loan.

## DECISION

Affirmed.