*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0379, A14-0564**

Timothy E. Lewis,
Respondent,

vs.

Paul J. Borchert, et al.,
Appellants.

**Filed January 12, 2015
Affirmed; motion granted and motion denied
Rodenberg, Judge**

LeSueur County District Court
File No. 40-CV-12-1035

Justin P. Weinberg, Margaret A. Goetze, Briggs & Morgan, P.A., Minneapolis, Minnesota (for respondent)

John J. Steffenhagen, Joshua R. Ward, M. Chapin Hall, Hellmuth & Johnson, PLLC, Edina, Minnesota (for appellants)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

The district court adjudicated this action brought by respondent for a buyout of his interest in two businesses: a limited liability company and a corporation. Appellants argue that the district court erred in (1) ordering a statutory buyout of the limited liability

company, (2) establishing the terms of the buyout, including an award of attorney fees to respondent, (3) using a 2007 agreement to value the parties' equity in a business, and (4) amending an order after appellants perfected this appeal. Respondent moved to strike arguments in appellants' reply brief, and appellants moved to strike respondent's motion. We affirm, grant respondent's motion to strike, and deny appellants' motion.

## FACTS

Respondent Timothy E. Lewis was one of the owners of two related businesses, a limited liability company, appellant BLM Properties, LLC (BLM), and a corporation, appellant The Canopy Group, Inc. (Canopy). BLM is a real-estate holding company that was owned equally (one-third each) by respondent, appellant Paul Borchert, and appellant Jeffrey McDonald. BLM owns a building in LeSueur and also owns 65% of Chatfield Suites, LLC, which owns a building in Belle Plaine. Canopy is a corporation that was also owned by Lewis, Borchert, and McDonald. Borchert owned 36% of the shares, McDonald 34%, and Lewis 30%. Canopy is an insurance agency that sells personal, commercial, and farm lines of property and casualty insurance out of the LeSueur building owned by BLM.

Before 2012, respondent performed property management for BLM, including collecting and depositing rent checks from tenants, overseeing maintenance, and paying property taxes and utilities. Respondent was also employed by Canopy, selling personal, commercial, and farm insurance. In late 2011, the working relationship between Borchert and respondent deteriorated to the point that the parties could no longer work together. On March 8, 2012, both Borchert and respondent were presented with two

2

buyout documents: one providing that respondent would buy Borchert's interests in BLM and Canopy and one providing that Borchert would buy respondent's interests in BLM and Canopy.

Respondent determined that he would not buy Borchert's interests, and the parties began negotiating for Borchert and McDonald to buy out respondent's interests in BLM and Canopy. During negotiations, a tentative agreement was reached on the terms for the BLM buyout, but the owners could not agree on terms for a Canopy buyout. There was no buy-sell agreement for BLM but Canopy had a Stockholder Agreement in place, which included a provision prohibiting respondent from soliciting customers of Canopy within a 30-mile radius for a three-year period.[1] In mid-2012, negotiations broke down. Respondent was unwilling to accept a provision for a four-year noncompete clause in the Canopy agreement. Borchert and McDonald were not willing to buy respondent's interest in BLM without an agreement concerning Canopy. Respondent's employment with Canopy ended in June 2012.

On September 17, 2012, respondent initiated this suit against appellants and moved the district court to order a buyout of his shares in BLM. After a hearing, the district court ordered Borchert and McDonald to buy out respondent's shares of BLM. The district court found that Borchert and McDonald "acted in bad faith when they refused to buyout [respondent's] interest in BLM without [respondent] signing the Canopy Agreement." Additionally, the district court concluded that this was unfairly

---

[1] The Stockholder Agreement was originally executed in 2001. The parties dispute whether 2004 or 2007 amendments were valid and are applicable.

prejudicial because respondent had "a reasonable expectation that he would be paid the buyout price of his interests in BLM even though there were other issues for the buyout of the Canopy Group." The district court awarded respondent attorney fees based on the finding of bad faith by appellants.

The parties were unable to agree on a price for BLM, and the district court appointed Mr. Hokanson, an appraiser, to estimate BLM's fair value. At a valuation hearing, the appraiser testified that the fair market value of BLM property was $685,705, of which respondent's interest was $122,997.13. Appellants called William Herber, a business appraiser, to testify at the valuation hearing. Herber testified that marketability and lack of control discounts should be applied to the fair market value determined by the appraiser. Herber testified that a 10% lack of control discount and 25% marketability discount should be applied to Hokanson's appraisal. Herber also testified that he found one issue with Hokanson's calculations and that respondent's interest in BLM should have been $122,806. The district court found that the fair market value of respondent's interest in BLM was $122,806. It did not apply any discounts.

Appellants were ordered to pay respondent the $122,806 fair market value of his interest in BLM or set up an installment plan within 40 days. The parties were unable to agree on an installment plan, and a hearing was held on the issue of the terms of payment to respondent. The district court ordered appellants to pay respondent monthly payments of $10,000 until the total amount was paid.

The litigation continued on respondent's other claims. As noted above, Canopy had a Stockholder Agreement that provided the valuation of a shareholder's interest and

provided that the valuation price or formula could be amended by written agreement of all shareholders. In 2007, the parties created a document styled as a "Buy – Sell Agreement Payment Schedule The Canopy Group." It was signed by all parties and notarized.[2] This agreement lists values for each shareholder's interest by year from 2007 to 2013.

After discovery concerning the Canopy claims, both parties moved for summary judgment. The district court granted respondent's motion for summary judgment in part, concluding that the 2007 agreement was valid and governed the value of respondent's shares in Canopy.[3]

Appellants filed their notice of appeal with the district court on March 7, 2014, having signed and dated the notice on March 6. On March 7, the district court amended its order concerning the BLM buyout installment, adding: "In the event that Defendant, BLM, defaults on any of the payments, judgment may be entered and docketed for that amount upon an Affidavit by the plaintiff's attorney as to the dates and amounts not paid." On March 11, appellant's notice of appeal was filed with this court. Appellants filed a separate appeal on April 4, arguing that the district court lacked jurisdiction to modify its order. We granted appellants' motion to consolidate the appeals.

After briefing, respondent moved to strike three new arguments in appellants' reply brief related to attorney fees, parol evidence, and law-of-the-case doctrine. Appellants then moved to strike respondent's motion as an improper sur-reply brief. On

---

[2] The parties dispute whether there was also an amendment in 2004.
[3] The district court subsequently also granted partial summary judgment for appellants on issues that are not part of this appeal.

October 13, 2014, we granted the motion to strike appellants' reply-brief arguments concerning law-of-the-case doctrine, but reserved ruling on the other motions.

**D E C I S I O N**

**I.**

Appellants argue that the district court erred when it ordered the statutory buyout of BLM because discovery was incomplete and because respondent's reasonable expectations were not frustrated by Borchert and McDonald. A court ordered statutory buyout is an equitable remedy, and a court of equity "is to be accorded broad latitude." *Bolander v. Bolander*, 703 N.W.2d 529, 548 (Minn. App. 2005), *review dismissed* (Minn. Nov. 15, 2005). We review "the district court's exercise of equitable relief for abuse of discretion." *Id.*

"A court may grant any equitable relief it considers just and reasonable in the circumstances" when "those in control of the limited liability company have acted . . . in a manner unfairly prejudicial toward one or more members in their capacities as members." Minn. Stat. § 322B.833, subd. 1, 1(2)(ii) (2012); *see also Stone v. Jetmar Props., LLC*, 733 N.W.2d 480, 486 (Minn. App. 2007) (stating that law on chapter 302A guides our interpretation to the limited liability company laws because chapter 302A served as the basis for chapter 322B). The district court "shall take into consideration the duty that all members in a closely held limited liability company owe one another to act in an honest, fair, and reasonable manner." Minn. Stat. § 322B.833, subd. 4 (2014). "The phrase 'unfairly prejudicial' is to be interpreted liberally." *McCallum v. Rosen's Diversified, Inc.*, 153 F.3d 701, 703 (8th Cir. 1998). In ruling on a buyout motion under

6

the statute, the district court is to consider the parties' reasonable expectations with respect to each other and the company. *Id.* Minority shareholders are in a vulnerable position and the statutory buyout provision provides the district court the flexibility to fashion an adequate and equitable remedy. *Pedro v. Pedro*, 463 N.W.2d 285, 288 (Minn. App. 1990), *review denied* (Minn. Jan. 24, 1991).

Appellants argue that the district court erred in ordering the BLM buyout before discovery was complete. The district court concluded that Borchert and McDonald treated respondent "in an unfairly prejudicial manner by their refusal to purchase [respondent's] interest in BLM when [he] has a reasonable expectation that he would be paid the buyout price of his interest in BLM even though there were other issues for the buyout of the Canopy Group." The district court also found that Borchert and McDonald "acted in bad faith when they refused to buyout [respondent's] interest in BLM without [him] signing the Canopy Agreement" and that a buyout "would be fair and equitable under all of the circumstances of this case."

There is factual support in the record for the district court's exercise of its discretion in granting respondent's buyout motion for his BLM interests. Borchert and McDonald did not dispute the claim that they were unwilling to buy respondent's interests in BLM unless respondent agreed to terms for purchase of his interest in Canopy. Appellants' counsel agreed at the buyout motion hearing that "inevitably [the sale] will occur at some point . . . but it's how we get there." The district court found that the refusal of Borchert and McDonald to negotiate to buy respondent's interests in BLM unless an agreement was reached concerning Canopy was unfairly prejudicial and that

7

their actions were taken in bad faith. Appellants argue that negotiation strategy cannot constitute unfairly prejudicial conduct. However, the district court concluded that appellants' unfairly prejudicial conduct arose from their *refusal* to negotiate on the BLM buyout separately from Canopy. The district court did not abuse its discretion in concluding that appellants' refusal to consummate the inevitable BLM transaction unless respondent agreed to terms on Canopy was unfairly prejudicial conduct. The district court, both at the motion hearing and in its order, stated that the BLM buyout decision would not prejudice other matters in the case related to Canopy. In these circumstances, the district court acted within its discretion to order the buyout when and how it did.

The statute provides a process for determining price if the parties cannot agree. Minn. Stat. § 322B.833, subd. 2 (2014). The district court provided a mechanism under the statute for what the parties agreed would be the inevitable purchase of respondent's interests in BLM. We see no error in the district court's buyout order concerning BLM.

**II.**

Appellants make three arguments on appeal concerning the details of the BLM buyout ordered by the district court. First, they argue that the district court should have discounted the fair market value analysis for "lack of control" and marketability factors. Second, they argue that the payout terms ordered by the district court must be reversed because they are unreasonably onerous. Third, appellants argued in their reply brief that the district court erred in awarding attorney fees.

Concerning attorney fees, respondent moved to strike appellants' reply brief argument that the district court erred in awarding attorney fees. Appellants argue that,

8

because they argued in their principal brief for "reversal of the buy-out order *in toto*," they necessarily preserved the attorney fee issue. The broad challenge to the buyout order is addressed above. There was no specific argument concerning fees in appellants' principal brief. We therefore grant respondent's motion to strike this argument from appellant's reply brief. *See* Minn. R. Civ. App. P. 128.02, subd. 4 (stating that a reply brief "must be confined to a new matter raised in the brief of respondent"); *Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 707 (Minn. App. 2002) (concluding that arguments raised in a reply brief, and not in a principal brief, are not properly before us and may be stricken from the brief).[4]

Appellants argue that the district court erred in declining to apply marketability and lack-of-control discounts to determine the value of respondent's interests in BLM and in setting up a one-year installment plan. We separately analyze the issue of discounts and the payment schedule ordered.

We review de novo whether a marketability discount applies. *Advanced Commc'ns Design Inc. v. Follett*, 615 N.W.2d 285, 289 (Minn. 2000). A court-ordered statutory buyout is an equitable remedy and the district court "has broad discretion both in the process and the ultimate determination of the 'fair value' of the shares to be sold." *Id.* at 290 (citing Minn. Stat. § 302A.473, subd. 7). Fair value is a shareholder's "pro rata share of the value of the corporation as a going concern without a discount for lack of marketability," absent extraordinary circumstances. *Id.* at 292. In determining the fair

---

[4] Because we grant respondent's motion to strike portions of appellants' reply brief, we deny appellants' motion to strike respondent's motion as improper sur-reply briefing as to attorney fees.

9

value, a district court may use "any technique that is generally accepted in the relevant financial community and should consider all relevant factors." *Id.* at 290. The value "must be fair and equitable to all parties." *Id.* In determining whether extraordinary circumstances exist, the district court should review whether any shareholder has "acted in a manner that is unfairly oppressive to the other or has reduced the value of the corporation," whether other remedies exist, or "whether any condition of the buy-out, including price, would be unfair to the remaining shareholders because it would be unduly burdensome on the corporation." *Id.* at 292-93.

Appellants argue that the district court erred in declining to apply a marketability discount to the value of BLM as determined by the appraiser. The supreme court declined to establish a bright-line rule for when marketability discounts should be applied, but instead established a rule to achieve "maximum flexibility." *Id.* at 292. In *Follett*, the supreme court stated the general rule is that fair value includes "a pro rata share of the value of the corporation as a going concern without a discount for lack of marketability." *Id.*

Here, the district court reviewed the three factors identified as relevant by *Follett* and determined that (1) respondent did not act in an unfairly oppressive manner, (2) respondent did not take actions to reduce the value of the company, and (3) when viewing the totality of the circumstances, the burden imposed on appellants was not unfair. In its analysis of whether the burden was unfair, the district court stated: "The burden may involve selling one of the properties in order to pay [respondent,] but that does not rise to the level of extraordinary or unfair to force some sale of assets to pay a

departing member." The district court's analysis is sound based on the facts of this case. Because the nature of BLM, a real-estate holding company, is such that profits and cash flow are limited, the district court acted within its authority in concluding that extraordinary circumstances did not exist to warrant application of a marketability discount.

Appellants also argue that the award of $122,806 constitutes an unfair wealth transfer. The district court should avoid unfair wealth transfers by reviewing whether any shareholder has "acted in a manner that is unfairly oppressive to the other or has reduced the value of the corporation." *Id.* But appellants did not provide any evidence at the valuation hearing that respondent had acted in any manner to reduce the value of BLM or oppress Borchert and McDonald. Since there is no evidence of oppressive behavior or devaluing of BLM, the district court properly concluded that the award would not constitute an unfair wealth transfer.

Appellants also argue that the district court failed to consider the financial condition of BLM, or "whether any condition of the buy-out, including price, would be unfair to the remaining shareholders because it would be unduly burdensome on the corporation." *See id.* at 292-93; *see also* Minn. Stat. § 322B.833, subd. 3 (2014) (stating that the district court "shall take into consideration the financial condition" of the company). Appellants argue that the purchase price is too high because of BLM's limited profits and cash flow. The district court addressed appellants' ability to pay the price by stating that it may be necessary for BLM to sell property to pay respondent his fair value. Although the district court did not require appellants to sell property, it

11

considered that possibility and concluded that a sale of property, if necessary, would not be unduly burdensome or unfair, and would not constitute an extraordinary circumstance. The record supports the district court's analysis and conclusions on this issue.

Appellants also challenge the district court's refusal to apply a minority shareholder discount. The section of their brief devoted to the discounts analyzes the application of the marketability discount, but does not make any specific arguments or cite legal authority specific to applicability of the lack of control discount. We consider the issue of minority-shareholder discount to have been inadequately briefed. *See State v. Morrow*, 834 N.W.2d 715, 730 (Minn. 2013) (holding that we do not consider claims when an appellant fails to cite the record or any legal authority). We therefore do not consider the issue.

We also conclude that the district court acted within its discretion in finding that no extraordinary circumstances existed requiring application of a lack-of-control discount. Generally, a district court does not abuse its discretion in declining to apply a lack-of-control discount to a statutory buyout in a case such as this. *Pooley v. Mankato Iron & Metal, Inc.*, 513 N.W.2d 834, 838 (Minn. App. 1994). We stated there that "this court in *MT Properties* held minority discounts to be improper 'because the legislature has enacted the statute with the evident aim to protect the dissenting shareholder.'" *Id.* *(citing MT Props., Inc. v. CMC Real Estate Corp.*, 481 N.W.2d 383, 388 (Minn. App. 1992)).

Lastly, appellants argue that the district court erred in establishing monthly $10,000 payments to respondent for his interest in BLM. This installment plan would pay respondent in full in approximately one year.

The statute requires that, once the fair value has been established by the district court, it "must be paid in one or more installments as agreed on by the parties, or, if no agreement can be reached within 40 days of entry of the order, as ordered by the court." Minn. Stat. § 322B.833, subd. 2. Relief granted by the district court should "be fair and equitable to all parties under all of the circumstances of the case." *Id.* The district court "shall take into consideration the financial condition of the limited liability company but shall not refuse to order any particular form of relief solely on the ground that the limited liability company has accumulated or current operating profits." *Id.*, subd. 3. We review equitable decisions of the district court for an abuse of discretion. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011); *Bolander*, 703 N.W.2d at 548.

The parties were unable to agree on a payment schedule within 40 days. Respondent requested one lump-sum payment while appellants proposed unsecured payments over ten years. The district court ordered appellants to pay respondent in monthly installments of $10,000 until the purchase price and interest were paid. Appellants argue that this "excessive," "unreasonable," and "accelerated" payment schedule is improper because BLM's average annual income over the past five years was $3,881.40 and the cash flow of the company had not exceeded $8,882 over the past five years. However, as previously noted, BLM is a real-estate holding company that, by nature and design, has limited profits and limited cash flow. As discussed, the district

13

court considered that appellants may have to sell property to pay respondent's interests in the company, "but that does not rise to the level of extraordinary or unfair to force some sale of assets to pay a departing member."

Because the district court found that respondent was entitled to a buyout of his interests in BLM, and did not err in determining the fair value of respondent's interest in BLM, it was obligated under the statute to order payment of that fair value. Minn. Stat. § 322B.833, subd. 3. The district court could, and did, order payment by installments as the statute allows. *Id.*, subd. 2. Appellants had ample opportunity, which they took, to argue the financial impact of the buyout to BLM. We conclude that the district court acted within its discretion in requiring appellants to pay respondent in $10,000 monthly payments.

**III.**

Appellants argue that the district court erred when it used a 2007 agreement to determine the value of respondent's ownership interest in Canopy. They argue that the values set forth in the 2007 agreement were subject to a condition precedent and that those values would apply only if Canopy successfully acquired MacKenzie Agency. The district court granted partial summary judgment in favor of respondent, concluding that the 2007 agreement was "plain and clear and does not condition the amended language" on the purchase of the MacKenzie Agency, as appellants argue.

We review a district court's decision to grant summary judgment de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). On review, we "determine whether the district court properly applied the law and

whether there are genuine issues of material fact that preclude summary judgment." *Id.* We view evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "The construction and effect of a contract presents a question of law." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

Appellants argue that the district court erred in determining the 2007 agreement was a valid agreement that determined the value of the owners' interests in Canopy. In their principal brief, appellants argue that the agreement was subject to a condition precedent: that Canopy would purchase the MacKenzie Agency. In their reply brief, appellants argue that the contract is ambiguous and that parol evidence should be admitted to determine the parties' intent. Respondent moved to strike this argument as improperly before us, having been raised only in appellants' reply brief. *See* Minn. R. Civ. App. P. 128.02, subd. 4 (stating that a reply brief "must be confined to a new matter raised in the brief of respondent"); *see also Wood*, 654 N.W.2d at 707 (concluding that arguments raised in a reply brief and not in a principal brief are not properly before us and may be stricken from the brief). On careful review, we conclude that the parol-evidence arguments were not advanced in appellants' principal brief. Respondent's motion to strike this argument in appellants' reply brief, therefore, is granted, and we do not further address the parol-evidence arguments. And because we grant respondent's motion to strike, we deny appellants' motion to strike respondent's motion as improper sur-reply briefing.

15

A shareholder agreement is "valid and specifically enforceable, if the agreement is signed by all persons who . . . are then the shareholders of the corporation." Minn. Stat. § 302A.457, subd. 2(a) (2014). "The agreement is enforceable by the persons who are parties to it." *Id.*, subd. 2(b) (2014). "In interpreting a contract, the language is to be given its plain and ordinary meaning." *Brookfield*, 584 N.W.2d at 394. "Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning and will not be considered ambiguous solely because the parties dispute the proper interpretation of the terms." *Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. App. 2003), *review denied* (Minn. Feb. 25, 2004). A contract should be interpreted to give meaning to all of its provisions. *Brookfield*, 584 N.W.2d at 394.

A condition precedent is "any fact except mere lapse of time which must exist or occur before a duty of immediate performance by the promisor can arise." *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974) (quotation omitted); *see also Nat'l City Bank v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 176 (Minn. 1989) (defining a condition precedent as "any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract"). "[T]here are no particular code words needed to form an express condition." *Carl Bolander & Sons*, 298 Minn. at 433, 215 N.W.2d at 476.

The agreement in question here is a one-page document titled "Buy – Sell Agreement Payment Schedule The Canopy Group." It was signed by all parties and

notarized. It lists values for each shareholder's interest for each year from 2007 to 2013 and includes two footnotes. The table is replicated below:

| | PAUL [BORCHERT] | JEFF [MCDONALD] | TIM [LEWIS] |
|---|---|---|---|
| 2007 | $800,000 / 25* | $755,000 / 25* | $667,000 / 25* |
| 2008 | $825,000 / 35 | $779,000 / 35 | $688,000 / 35 |
| 2009 | $850,000 / 45 | $803,000 / 45 | $708,000 / 45 |
| 2010 | $875,000 / 55 | $826,000 / 55 | $729,000 / 55 |
| 2011 | $900,000 / 65 | $850,000 / 65 | $750,000 / 65 |
| 2012** | $950,000 /75 | $897,000 / 75 | $792,000 / 75 |
| 2013*** | $1,000,000 / 85 | $944,000 / 85 | $833,000 / 85 |

. . .

** MacKenzie complete/ 4 years remain on Handwerk / building 7 years
*** From 2013 on a 2% increase in value on agreement unless another agreement written and signed

Appellants argue that the words "MacKenzie complete" created a condition precedent: Canopy purchasing the MacKenzie Agency. The district court found that there was no condition precedent and that the contract was a valid, unambiguous buy-sell agreement outlining the interests for each shareholder, stating:

> Here, in the light most favorable to [appellants], there is not a genuine issue of material fact as to the validity of the 2007 Agreement. The contract language is plain and clear and does not condition the amended language on the purchase of the MacKenzie Agency or upon the death of a shareholder.

No special terms are necessary to create a condition precedent, but there must be some language that indicates the agreement, or its terms, are conditioned upon some event. For example, in *Carl Bolander & Sons*, the condition read "*assuming that* no extreme depth pockets of unsuitable material exists that do not show up in your soil borings" was deemed "clear and unequivocal." *Id.* (emphasis added). Here, nothing

suggests that "MacKenzie complete" created a condition precedent. If the two words were intended to create a condition precedent, the asterisks would have related to 2007, not 2012. Moreover, the words "MacKenzie complete" seem clearly to explain the values set forth in the agreement beginning in 2012. And even for 2012 and 2013, there is no suggestion of any condition precedent. The district court correctly concluded that there exists no genuine issue of material fact concerning the existence of a condition precedent to the 2007 Canopy agreement.

We affirm the district court's grant of partial summary judgment that the 2007 agreement was valid and established the value of each shareholder's interest in Canopy.

**IV.**

Appellants finally argue that the district court erred in amending its order establishing the payment plan for respondent's interest in BLM after appellants had appealed. "Construction and application of the Minnesota Rules of Civil Procedure is . . . a question of law that we review de novo." *Eclipse Architectural Grp. v. Lam*, 814 N.W.2d 692, 696 (Minn. 2012).

Minn. R. Civ. App. P. 108.01, subd. 2 states that "the filing of a timely and proper appeal suspends the trial court's authority to make any order that affects the order or judgment appealed from." However, "the trial court retains jurisdiction as to matters independent of, supplemental to, or collateral to the order or judgment appealed from." *Id.* The comment to the 2009 amendment states that "Rule 108.01 is a new rule, but it is not intended to create new law. Its provisions are drawn from existing Rule 108.01, subdivision 1, and codify long standing common law." Minn. R. Civ. App. P. 108.01,

18

2009 advisory comm. cmt. The comment also cites *Kellar v. Von Holtum*, 605 N.W.2d 696, 700 (Minn. 2000), which states: "Collateral matters, such as motions for attorney fee sanctions and costs and disbursements, are independent of the underlying decision and do not seek to modify the underlying decision in any way." *See also Phillips-Klein Cos. v. Tiffany P'ship*, 474 N.W.2d 370, 372 (Minn. App. 1991) ("The trial court's jurisdiction is suspended only as to matters involved in the appeal, but not as to matters independent of or supplemental to the appeal."). Additionally, an award of prejudgment interest "is not intertwined with the merits of a case" and "is collateral and supplemental to [a] decision on the merits, playing no role in determining ultimate liability." *Fette v. Peterson*, 406 N.W.2d 594, 597 (Minn. App. 1987).

Here, the district court amended its buyout order on March 7, 2014, the same date appellants' notice of appeal was filed with the district court. The district court's amended order did not change the terms of the payment plan in any way. Rather, the amendment merely provided for judgment to be entered against appellants "upon an Affidavit by the [respondent's] attorney as to the dates and amounts [of the installment plan] not paid."[5]

As in *Fette*, the district court's March 7 amendment of the order to add a clause allowing entry of judgment was not intertwined with the merits of the case and had no impact on appellants' ultimate liability. *See id.* The amendment was collateral to the merits and appellants' ultimate liability, and did not "affect[] the order or judgment appealed from." Minn. R. Civ. App. P. 108.01, subd. 2.

---

[5] Appellants' appeal was not filed with this court until March 11, 2014, but respondent does not argue that it was not until then that the appeal was perfected.

19

It appears to us that the added clause was intended to have been included in the original order, which contained no enforcement provision. It also appears to us that, in making the amendment, the district court was correcting a clerical omission. Remanding the case at this point would be a waste of judicial resources, as it is evident to us that, were we to remand on this issue, the district court would make the identical clerical clarification. *See Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (declining to remand for a de minimis technical error); *see also Evans v. Blesi*, 345 N.W.2d 775, 781 (Minn. App. 1984) (declining to remand and ordering a reduction in damages consistent with the district court's attempted reduction after appeal had been taken and "taking cognizance of [the district court's action in doing so] for the insight it affords").

In sum, we affirm the district court, grant respondent's motion to strike arguments regarding attorney fees and parol evidence in appellants' reply brief, and deny appellants' motion to strike respondent's motion as an improper sur-reply brief.

**Affirmed; motion granted; motion denied.**